Wallow *v.* York Retirement Board, Appellant.

Argued September 26, 1955. Before STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Lavere C. Senft,* with him *John W. Heller, III,* and *Herbert B. Cohen,* for appellants.

*Henry B. Leader,* with him *McLean Stock,* and *Stock & Leader,* for appellee.

OPINION BY MR. JUSTICE JONES, November 14, 1955:

Pursuant to authority conferred by the Act of May 23, 1945, P. L. 903, 53 PS §§12198-4371, et seq., the City of York established, by ordinance of February 14, 1947, a retirement system for its officers and employees in the manner, under the conditions, and subject to the qualifications set forth in the Act. The provisions of the ordinance followed closely the specified authorizations of the Act and added several further sections.

Section 17 of the ordinance, which was one of the added sections, provided that no compensation should be paid to any person entitled to retirement under the ordinance prior to the first day of March, 1949. But the right of any person to receive compensation after that date was to become vested whenever, on or after *the effective date of the ordinance* (viz., March 1, 1947), such person should meet the requirements set

forth in the ordinance. The ordinance further provided that any person whose right to receive compensation should become vested between the effective date of the ordinance and the first day of March, 1949, and who should cease to be in the service of the City prior to the first day of March, 1949, either because of the voluntary or involuntary termination of his employment, should retain his right to receive after March 1, 1949, the compensation to which he had become entitled, under the provisions of the ordinance, by continuing his contributions until March 1, 1949, at the same rate as when he ceased to be in the service of the City.

At the effective date of the retirement ordinance (viz., March 1, 1947), Wallow, the plaintiff, had been employed by the City of York as a draftsman and chief engineer for upwards of twenty years and was then past sixty years of age. He was discharged on January 5, 1948, by action of the City Council. Wallow had joined the retirement system upon the adoption of the ordinance and had continued his contributions to the retirement fund not only to the date of his discharge but thereafter until March 25, 1949, when the retirement board refused to accept further contributions from him. One of the requirements to qualify for retirement compensation, as set forth in the ordinance, is a provision that the applicant-employee be sixty years of age or older and have served as a City employee for twenty years or more. See Section 4 (a) of the Act and the ordinance.

Having both the age and length of service required for retirement, Wallow made demand, subsequent to March 1, 1949, for the retirement compensation allegedly due him. His demand having been refused, he instituted the present action in mandamus against the City's retirement board and the individual members

thereof. Preliminary objections by the defendants to the plaintiff's complaint were overruled and, after the pleadings had been completed, the plaintiff moved for judgment thereon which the court below granted. This appeal by the defendants followed.

The appellants' principal contention is that Section 17 of the ordinance exceeded the authority conferred on the City by the enabling Act of 1945. With that, we cannot agree. Surely, the retirement board cannot seriously object to the fact that payment of retirement compensation was postponed to March 1, 1949, two years after the effective date of the ordinance. That provision was undoubtedly inserted for the benefit of the retirement system in order that, through contributions, in the interim, by members of the system and appropriations by the City, a reserve fund might be built up to insure the solvency of the system. Obviously, the retirement board is in no position to complain that the ordinance postponed until March 1, 1949, payment of retirement compensation to members eligible for retirement before that date. In fact, the only persons that could be harmed by the postponement of retirement compensation were members of the system who, like Wallow, became eligible for retirement prior to March 1, 1949. And, had the postponement been too long continued, aggrieved members could have had redress. In *Haldeman v. Hillegass,* 335 Pa. 375, 381, 6 A. 2d 801, this court took occasion to warn retirement officials that "the courts will not tolerate undue delay in the initiation of the system after its adoption . . . ."

The provision in Section 17 of the ordinance which the appellants especially urge as constituting an excessive exercise of the statutory authority is the portion which provides that any person whose right to receive

compensation shall become vested between the effective date of the ordinance (March 1, 1947) and March 1, 1949, who shall cease to be in the service of the City prior to March 1, 1949, shall retain his right to receive thereafter compensation to which he has become entitled under the provisions of the ordinance. What the ordinance thus provided is no more than what this court has declared a number of times to be the law applicable to the specified circumstances. So that, even had the ordinance omitted entirely the particular provision, whereof the appellants complain, the law would have supplied the deficiency. In *McBride v. Allegheny County Retirement Board*, 330 Pa. 402, 405-406, 199 A. 130, Mr. Chief Justice KEPHART, speaking for the court, said "An employee fulfilling these conditions [viz., age and service requirements for retirement] then has a vested interest in retirement pay which cannot be destroyed, weakened or departed from by subsequent legislation. Neither dismissal from service or office, nor any involuntary removal can affect this vested right to retirement pay. We endeavored to specifically hold in the *McGovern* case that eligibility for retirement pay is complete as soon as an employee or member of the retirement system has satisfied the conditions requisite for retirement, *whether the employee chooses to retire immediately or to continue in active service.* His rights to such pay are fixed as of the time he attained eligibility." See *Retirement Board v. McGovern*, 316 Pa. 161, 169, 174 A. 400; also *Haldeman v. Hillegass*, supra, at pp. 383-384.

It is plain enough that, at the time of Wallow's discharge on January 5, 1948, he fulfilled the requirements for retirement under Section 4 (a) of the ordinance as well as the Act, both as to age and length of service (viz., sixty years and twenty years, respectively). And, it was of no importance whether his serv-

ice with the City was terminated voluntarily or involuntarily: cf. *McBride v. Allegheny County Retirement Board*, supra. The plaintiff, therefore, became entitled to retirement on January 5, 1948, and, consequently, to retirement compensation from the postponed date of payment (viz., March 1, 1949). But, the appellants seize upon a dictum in *Altieri v. Allentown Retirement Board*, 368 Pa. 176, 180, 81 A. 2d 884, and, from that, argue that, inasmuch as Wallow's separation from the City's service was involuntary, he is not eligible for retirement under Section 4 (a) of the ordinance. The argument is fallacious.

In the *Altieri* case the claims for retirement were made under Section 4 (b) of the ordinance, which conferred a right to retirement upon employees of the City who had had twelve years service and whose employment had been terminated without voluntary action on their part. However, Section 4 (b) did not fix an age for the commencement of retirement and, for that reason, we held Section 4 (b) to be "incomplete and unenforceable" because "A fixed age for the commencement of retirement is a requisite of the system." The claimants suggested that the sixty-year age for the commencement of retirement under Section 4 (a) should be read into Section 4 (b). In rejecting the suggestion, we expressly noted that Section 4 (a) "has no applicability whatsoever to the claims presented by the petitioners [Altieri et al.]"; hence, our further observation that Section 4 (a) was "limited to cases of *voluntary* retirement" was plainly a dictum. But the distinction, thus noted, was then a possible construction. At that time, Section 4 (b) had not yet been amended by the Act of September 29, 1951, P. L. 1614, which was passed as a result of our decision in the *Altieri* case. As Section 4 (b) was originally enacted, it covered the retirement not only of employees

with twelve years service whose employment was terminated involuntarily but also the retirement of employees with twenty years of involuntarily terminated service. Manifestly, that provision embraced an employee who was past sixty years of age as well as any other. But, with the 1951 amendment of Section 4 (b), it at once became clear that the employees with twenty years of involuntarily terminated service who were entitled to retirement under Section 4 (b) were such as had not yet reached the age of sixty. It follows that, since Section 4 (a) applies without limitation to employees who are sixty or more and have had twenty years or more service with the City, it is immaterial whether their service was terminated voluntarily or involuntarily. And, with that question now squarely raised, we so hold.

It is unnecessary to consider the appellants' further contention that Wallow does not qualify for retirement under Section 4 (b) of the ordinance.

Judgment affirmed.