## Commonwealth, Appellant, v. Souder.

464

Argued November 17, 1952. Before RHODES, P. J.,
HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUN-
THER, J., absent).

*Harry A. Estep,* Special Deputy Attorney General, with him *Earle T. Adair,* Special Deputy Attorney General, *Kennedy Smith,* Assistant Deputy Attorney General, *William H. Colvin,* Special Deputy Attorney General, and *Robert E. Woodside,* Attorney General, for appellant.

*James P. McArdle,* with him *Paul J. McArdle,* for appellees.

OPINION BY DITHRICH, J., January 20, 1953:

Defendant-appellees, all of whom were officers of the McKees Rocks Firemen's Protective Association, at such time or times as are set forth in the several indictments, were tried and convicted on seven counts of conspiracy and fraudulent conversion. They were also charged with the mutilation and destruction of corporate records and embezzlement by officers of a corporation. At trial the Commonwealth moved to amend the several indictments by striking the words "a non-profit corporation" therefrom and inserting in lieu thereof the words "an unincorporated association"

following the name of the association. The amendments were allowed. The trial court instructed the jury to find the defendants not guilty of mutilating and destroying records. The jury found the defendants not guilty of embezzlement, but guilty of conspiracy and fraudulent conversion.

The several defendants filed a motion in arrest of judgment on the ground of insufficient evidence, and a court en banc, having "found that the evidence was insufficient" to sustain the charge, discharged the defendants and dismissed the case, as it felt "required" to do under the provisions of the Act of June 15, 1951, P. L. 585, 19 PS §871.

The Commonwealth on appeal contends that the lower court was guilty of an abuse of discretion in invoking the Act of 1951; but, since we are constrained to reverse the order of the learned court on other grounds, we will not go into the question of discretion.

The Act of June 28, 1895, P. L. 408, imposing a tax on premiums paid to foreign fire insurance companies and providing that one-half of such tax was to be paid by the Commonwealth to the treasurers of cities and boroughs, has been amended from time to time, the last amendment having been the Act of May 26, 1949, P. L. 1825, 72 PS §2262. Under the provisions of the Act, as amended, all the tax received from foreign fire insurance companies doing business within the cities, boroughs, towns, and townships of the State is paid to the treasurers of the several municipalities. The Act further provides that "Each city, borough, town or township, receiving any payment from the State Treasurer hereunder, shall forthwith pay the amount received to the relief fund association of, or the pension fund covering the employes of the fire department . . . paid or volunteer . . . as is or are engaged in the service of such city, borough, town, or township, and

duly recognized as such by the council or commissioners or supervisors, as the case may be, of such city, borough, town, or township."

For the purpose of this case we are primarily concerned with the amendment of April 25, 1929, P. L. 709, which provides for payment of the tax to the relief fund association of the various municipalities. Pursuant to the amendment of 1929, the Borough of McKees Rocks adopted the following resolution:

"Resolution No. 465

"Officially recognizing the McKees Rocks Firemen's Protective Association of McKees Rocks, Pennsylvania, and making certain appropriations thereto.

"Section 1: Be it ordained and enacted by the Borough Council of the Borough of McKees Rocks and it is hereby ordained and enacted by authority of the same, that the McKees Rocks Firemen's Protective Association of McKees Rocks, Pennsylvania, be and it is officially recognized by the Borough Council of the Borough of McKees Rocks as an organization formed for the *purpose of maintaining an association for beneficial and protective purposes, to its members and their families in case of death, sickness, temporary or permanent disability or accident,* from the funds collected therein. [Emphasis supplied.]

"Section 2: That the aforesaid McKees Rocks Firemen's Protective Association of McKees Rocks be and it is hereby designated by the Council of the Borough of McKees Rocks as the proper association to receive such funds as are due and payable to the Borough Treasurer by the Treasurer of the State of Pennsylvania from the two per centum tax on premiums from foreign fire insurance companies.

"Section 3: That there is hereby annually appropriated from the Borough Treasury all such sums of

money that may hereafter be paid into the aforesaid Borough Treasury by the Treasurer of the State of Pennsylvania, on account of taxes paid on premiums by foreign fire insurance companies in pursuance to an Act of Assembly in such case made and provided. . . .

"Entered into an Ordinance this 10th day of October, 1939."

Prior thereto all such payments had been made to the McKees Rocks Firemen's Relief Association, a nonprofit corporation, which had been determined in an interpleader proceeding in the County Court of Allegheny County on March 19, 1938, to be the organization entitled to the fund.

The Commonwealth proved that from 1939, up to and including 1950, twelve checks drawn by the State Treasurer to the order of the Treasurer of McKees Rocks Borough were not deposited in the Borough's account but, instead, were endorsed to the order of the McKees Rocks Firemen's Protective Association and deposited to its account. The total of the twelve checks amounted to $21,554.94. When the account was audited by the State, or rather when an audit was attempted to be made on November 15, 1950, there was nothing on deposit in the account, nor did the officers have any canceled checks for the sums drawn against the account. The Commonwealth, however, was able to prove by photostatic copies of the checks made by the First National Bank of McKees Rocks, depository for the association, that they were all, without exception, made payable to cash. On one day there were two checks, each for the sum of $500. The only explanation offered was that the sum of $1,000 had been divided among the members "for insurance purposes."

Defendants take the position that since they were members of an unincorporated association they could use the funds of the association for whatever purpose

they desired, and they obviously did so, although certain of the defendants told the auditor that there was an "understanding" that the members were to use the money to pay premiums on individual insurance policies. However, none of them, nor any member of the association, took the stand to testify that any of the funds had been so expended. And, as pointed out by appellant, if—as contended by counsel for appellees— the group of firemen took title as individuals, "Why then all this talk (but no evidence) about the insurance these Appellees are said (by counsel, not by themselves) to have taken out with the split-up? If they had personal title there was no need for any explanation." Regardless of any "understanding" they may have had among themselves, they certainly were not entitled to split up the fund and use it for any purpose other than as provided by the Act of Assembly and the ordinance of the borough.

In an opinion dated October 22, 1929, and reported in 13 D. & C. 65 under the caption, "Relief Funds for Firemen," William A. Schnader, Special Deputy Attorney General, and later Attorney General, of the Commonwealth, advised the Auditor General, in respect of a township which did not have a relief fund association for firemen, that it did "not have any right, under the Act of 1929, to make any disposition of the check received from the State Treasurer, except as specifically set forth in the act. If it cannot use the money for the purposes set forth in the act, the check should be returned to the State Treasurer for cancellation." The words "set forth" in the opinion are not strictly in accordance with the Act, which stated "for the purpose indicated," rather than for the purposes "set forth."

Defendants argue that the words "Relief Fund Association of the fire department," as used in the Act,

cannot by implication be held to denote an organization "formed for the purpose of maintaining an association for beneficial and protective purposes, . . . in case of death, sickness, temporary or permanent disability or accident," the sole purpose for which the association was formed and officially recognized by ordinance of the Borough of McKees Rocks. In our opinion the ordinance is clearly within "the purpose indicated" by the Act and complementary thereto.

Defendants pose the question, "Who was defrauded?" Well, for one, there was the widow and children of a fireman who was killed in the line of duty. His widow and children received workmen's compensation, but not one cent from the Firemen's Protective Association. It is further argued that the association did not set up a relief fund. The answer to that argument is that the Commonwealth was then defrauded. If there was no relief fund set up, as provided by the Act of 1929, supra, the "Warrants for the above purposes," as provided by the Act, should have been returned by the borough treasurer to the State treasury.

Or if, as argued by appellees, the borough had no relief fund, then one should have been established or the money paid back to the State, in accordance with the opinion of the Deputy Attorney General as reported in 13 D. & C. 65, supra. The manner in which the fund was to be set up or administered was left by the Legislature to the municipalities. In our opinion the individual members were certainly not entitled to split it up among themselves for any purpose. When they did so, even if the members used the money for the purpose of purchasing individual policies—and there is no testimony on the part of any of the members to that effect—it was not only a fraud upon the widow and children of the fireman who was killed in action, but upon all present or prospective members

of the fire department of the borough. *There never was a group policy.*

In its opinion the court below said: "In the case of Commonwealth vs. Schuster, 158 Pa. Superior Ct. 164, [44 A. 2d 303] . . . it was held that ordinarily where a defendant has come into [possession of] property lawfully, evidence of a demand and a refusal to redeliver is essential to complete the proof of a conversion." That quotation is substantially correct as far as it goes; but we also said, speaking through RENO, J. (p. 167), "the absence of a demand is not controlling where the element of actual misapplication is made out by other evidence." And in *Commonwealth v. Wiener*, 340 Pa. 369, 17 A. 2d 357, which was an appeal from this Court, the Supreme Court said (pp. 375, 376): "It is true, as pointed out by the Superior Court, that 'if there are circumstances from which a fraudulent conversion may be inferred, intent is implied.'" The willful and total destruction of all records of the association is a "circumstance from which a fraudulent conversion may be inferred" and a criminal "intent . . . implied." There is ample evidence to sustain the conviction and it was error for the court below to discharge the defendants and dismiss the case.

The order is reversed, the verdicts are reinstated, and the defendants are ordered to appear in the court below for sentence at such time as the court shall direct.

---

DISSENTING OPINION BY ROSS, J.:

I am unable to agree with the majority and, therefore, dissent. I agree with the learned court below that "The proofs cannot support a contention that either McKees Rocks Borough, the Commonwealth of Pennsylvania, or any member of the Protective Association

was defrauded of its or his properties. . . If there was any division of these funds that was not authorized or implied in the laws that created same, then the recourse would be in the Civil Courts only. The testimony cannot support the finding that the Defendants acted with fraudulent and criminal intent."

I would affirm the orders of the court below.