Hanover Township Police Pension and Benefit Fund Association Case.

Argued April 23, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Harry L. Rossi,* Deputy Attorney General, with him *Jacob Schiffman, Thomas F. Gill,* and *Anne X. Alpern,* Attorney General, for appellant.

*Nelson A. Bryan,* with him *Edward D. Morgan,* for appellee.

OPINION BY MR. JUSTICE COHEN, July 2, 1959:

A petition for voluntary dissolution of the Hanover Township Police and Benefit Fund Association, Inc., a

nonprofit corporation, was filed for the purpose of dissolving the corporation and winding up its business. From the date of its incorporation, December 24, 1942, it functioned as a pension benefit association—electing officers, collecting and disbursing money as pension benefits to its members. Its principal sources of revenue included funds derived from association activities; payroll deductions of 2% of the annual salary of the members of the police force, who alone comprised the membership; and amounts received from the Commonwealth of Pennsylvania in accordance with the Act of May 12, 1943, P.L. 259, as amended, 72 P.S. §2263.1, which provided for the payment each year by the Commonwealth to the treasurer of the several cities, boroughs, towns, and townships their share of the amount received by the Commonwealth from a 2% tax paid upon premiums by foreign casualty insurance companies doing business within the said cities, towns and townships of the Commonwealth.

The sole point of controversy is, on dissolution of the association, what disposition should be made of the funds received by the association from the Commonwealth for the years 1946 through 1957, inclusive, which amount totals $67,836.97.

The Commonwealth of Pennsylvania petitioned the court to intervene in the dissolution proceedings alleging that it had an interest in the distribution of this pension fund for the reason that the funds paid by the Commonwealth to Hanover Township were required by law to be used for pension purposes; and further, the Commonwealth maintains an interest in the pension fund since the Auditor General's Department is required, under the Amendment of July 19, 1951, P.L. 1127, 72 P.S. §2263.1, to make audits of the various pension funds and accounts receiving disbursements from the Commonwealth.

After the Commonwealth was permitted to intervene, the Master held various hearings and submitted his final report. Exceptions were taken to the Master's Report by the Commonwealth. Thereupon, the court of common pleas entered a final order and concluded that the Commonwealth of Pennsylvania and Hanover Township had no right, title, or interest in the fund because, once distributed to the association under the Act of 1943, it became vested in the members of the association, and, therefore, the members had the right to transfer the funds as desired. The membership exercising its domination over the fund did vote to transfer the fund to the Hanover Township Police Pension Fund established pursuant to the Act of May 29, 1956, P.L. 1804, 53 P.S. §767.

The lower court also concluded that the balance of the funds of the association, which had been accumulated from sources other than those gained through state reimbursement, belongs to the members and could be distributed to them in their individual shares upon the proper dissolution of the nonprofit corporation. The court below also held that a retired police officer, Robert Yates, who had fulfilled all of the obligations necessary to receive a pension, was entitled to have provision made for the securing of his monthly pension upon the purchase of an annuity contract from an insurance company with the assets of the dissolved association. The latter two conclusions are not in dispute.

The paramount contention of the Commonwealth is that it retains interest and title to "state allocated" funds transferred to private police pension funds which are not utilized for pension purposes. The appellee, on the other hand, urges that the funds, once they were distributed to the private association, became vested in its members because the allocated funds constituted payment or deferred compensation for the services

rendered by the members as policemen and, once having made those contributions, the state had no authority to recall them.

The Act of May 12, 1943, P.L. 259, as amended, 72 P.S. §2263.1 provided for the payment by the Commonwealth of an amount equal to one-half the premiums paid by foreign casualty insurance companies to the treasurers of the several cities, boroughs, towns and townships for their police pension funds. The act also provided for the payment of these funds into municipal employees' retirement systems or state employees' retirement systems, depending upon the type of fund established. It was the intendment of the legislature to pay these amounts to the police pension funds recognized in the various municipalities.

The Act of 1943 was not the first attempt by the legislature to provide benefits for municipal employees. The Act of June 28, 1895, P.L. 408, as amended, 72 P.S. §2262, provided for a similar distribution to firemen's pension funds.

A survey of the two statutes reveals a striking similarity of purpose, source of funds, and disbursement of funds to the various pension associations, public and private. Still, it is urged by the appellee that once the disbursement is made to a private pension fund, the proceeds immediately vest in the members so that its disposition, upon voluntary dissolution, is subject to the will of the members. We do not agree.

In *Commonwealth v. Souder*, 172 Pa. Superior Ct. 463, 94 A. 2d 136 (1953), aff'd[1] 376 Pa. 78, 101 A. 2d

---

[1] The lower court granted a motion in arrest of judgment after the jury found the defendants guilty of conspiracy and fraudulent conversion. The Superior Court concluded that the evidence was sufficient to sustain the conviction and reinstated the verdicts. This decision was affirmed by the Supreme Court but the record was remanded to consider an undisposed motion for a new trial. There-

693 (1954), defendants—(officers of a private *firemen's* protective association)—were indicted and convicted on seven counts of fraudulent conversion and conspiracy because "state allocated" money had been divided among the individual members "for insurance purposes." Defendants took the position, as they do in the instant case, that since they were members of an unincorporated private association they could use the funds of the association for whatever purpose they desired. The court there held that the members were unable to split up the fund among themselves individually since the "state allocated" funds are required to be used for the purposes enumerated in the act, as well as the ordinances passed pursuant thereto. In view of that holding, and the similarity of the Act of 1943, and the Act of 1895, it does not appear arguable that the funds, once allocated by the state for certain pension purposes, became vested in the private association and are now disposable according to the wishes of the individual members. If this conclusion followed, the recipients of these state funds, by the mere device of setting up nonprofit corporations or private associations, could divert these funds from the purposes for which they were originally allocated.

Much is made by the lower court of the fact that these funds were allocated by the legislature so as to provide attractive conditions of employment, thereby enlisting the most competent policemen. One cannot quarrel with this view. Nevertheless, the funds were distributed solely for pension purposes and originated from the revenues of the state and not the employing municipality. Hence, it is inconsistent to permit members of a private association receiving these state funds

after, the Superior Court affirmed the granting of a new trial on other grounds. *Com v. Souder*, 176 Pa. Superior Ct. 523, 108 A. 2d 831 (1954).

to distribute them in any way they might desire. These funds never vested in the individual members and their intent to transfer the funds to the municipal pension plan was an unwarranted exercise of domination over the funds and of no legal effect.

. Moreover, the Commonwealth's right to audit the account of the pension funds is undisputed. An audit is necessary not only to insure that the municipality receives the money, and that it does not use it for general municipal purposes, but, if there is a private fund in the municipality, it also insures that the private fund actually receives the money from the municipality and that it, in turn, does not use the money for any illegal purpose. In view of this, it is scarcely maintainable that through the device of a voluntary dissolution, individual members could proceed to distribute state allocated funds to themselves or in any manner they desire. For the above reasons, we feel the Commonwealth retained an interest in these funds and was required to see that they were utilized for the purposes set forth in the Act of 1943.

However, since the Commonwealth maintains a supervisory interest in these funds, they urge that title to the funds revert to them, so that they can be reallocated to the State Policemen's Pension Fund. While we have already concluded that the rights of the association members do not vest in these state allocated funds, and, upon dissolution, they must remain segregated and channelled into the particular purpose for which they were originally allocated, nevertheless, to enable the Commonwealth to receive the funds once again for purposes of redistribution to a state policemen's fund would defeat the purpose of the original allocation. If the Commonwealth would receive the funds for state police purposes, it would be diverting them away from the geographical area from which the

source of the revenue funds was initially obtained by the Commonwealth. More important, the allocations were made and distributed for municipal police pension purposes and any deviation from such purpose is to be scrupulously avoided. We, therefore, conclude that the funds must remain segregated for the specific use for which they were originally allocated. It becomes clear that, by the establishment of the Hanover Township Police Pension Fund, pursuant to the Act of 1956, the monies contributed by the Commonwealth to the abandoned association were to be directly transferred to this municipal pension plan.

Therefore, that part of the final order and degree which concludes that the Commonwealth has no interest in the "state allocated" funds is reversed; that conclusion which awards the entire balance of the funds, including the Commonwealth's allocation, to the members of the association is modified to provide only for a distribution of those funds generated from private sources; but in all other respects the final order and decree is affirmed. It is also decreed that the Commonwealth's allocations are to be transferred directly to the municipal pension plan in accordance with this opinion.

Mr. Justice McBride took no part in the consideration or decision of this case.