## Volunteer Firemen's Relief Association of the City of Reading, Appellant, v. Minehart.

Argued October 3, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Paul H. Rhoads,* with him *George B. Balmer, Henry W. Rhoads, Ralph W. D. Levan,* City Solicitor, and *Balmer, Kershner, Mogel & Speidel,* and *Rhoads, Sinon & Reader,* for appellants.

*William H. Smith,* First Assistant Counsel, with him *Harry L. Rossi,* Deputy Auditor General, for Auditor General, appellee.

*Morris Gerber,* Deputy State Treasurer, for State Treasurer, appellee.

*Edward Friedman,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 22, 1967:

Under the Act of June 28, 1895, P. L. 408, §2, as amended, 72 P.S. §2262, there must be paid annually to the treasurers of the various municipal subdivisions of the Commonwealth the entire proceeds of the two percent tax paid upon premiums by foreign fire insurance companies. The Act further requires each recipient municipality to pay over the amount received by it to the relief fund association or pension fund covering the fire companies engaged in fire-fighting service in the municipality.

The City of Reading long ago recognized The Volunteer Firemen's Relief Association of the City of Reading (hereinafter the Relief Association) as the proper ultimate recipient of the funds received by it under the Act of 1895 and for many years has turned over these funds to the association. The association, in turn, has deposited them in its general fund.

The Auditor General of the Commonwealth is charged with the duty of auditing the accounts and records of every recipient of a state appropriation of money or any portion of a state tax to insure that funds received are expended only for the purposes for which they were paid. If they are not so expended, the Auditor General must notify the Governor and decline thereafter to approve requisitions for payment of such funds to the offending recipient until the improperly expended amount is restored by a proper expenditure. Act of April 9, 1929, P. L. 343, §403, 72 P.S. §403.[1]

---

[1] "The Department of the Auditor General shall have the power, and its duty shall be, to audit the accounts and records of every person, association, corporation, and public agency, receiving

Pursuant to Formal Opinion No. 684 of the Attorney General of Pennsylvania, 1957 Official Opinions of the Attorney General 20, the Auditor General's Department began to audit the accounts and records of firemen's relief fund associations which receive the funds described above. In concluding its audit of appellant, Relief Association's[2] accounts for 1959, 1960 and 1961 the Auditor General noted seven items of improper expenditure. As required by the Act of 1929, the Auditor General thereupon declined to approve further payments under the provisions of the Act of 1895.

Contending that the challenged expenditures were in fact not improper, appellants sought a writ of mandamus to compel appellees, the Auditor General and the State Treasurer, to approve and make payments to the City. The Court of Common Pleas of Dauphin County dismissed their complaint, holding that mandamus would not lie to compel payment, but this Court reversed and remanded with directions for further proceedings, 415 Pa. 305, 203 A. 2d 476 (1964). In its

---

an appropriation of money, payable out of any fund in the State Treasury, or entitled to receive any portion of any State tax for any purpose whatsoever, as far as may be necessary to satisfy the department that the money received was expended or is being expended for no purpose other than that for which it was paid. Copies of all such audits shall be furnished to the Governor.

"If at any time the department shall find that any money received by any person, association, corporation, or public agency, has been expended for any purpose other than that for which it was paid, it shall forthwith notify the Governor, and shall decline to approve any further requisition for the payment of any appropriation, or any further portion of any State tax, to such person, association, corporation or public agency, until an amount equal to that improperly expended shall have been expended for the purpose for which the money improperly expended was received from the State Treasury."

[2] The City of Reading is also an appellant.

decision on the merits of the case, the court below again dismissed the complaint in mandamus, holding that one of the seven expenditures, i.e., the use of state money and the interest earned thereon for the Relief Association's Special Death Benefit Fund was an expenditure which required appellees to withhold authorization and payment of funds under the Act of 1895. As to the other six items, the court below expressed the view that five were not improper and noted that appellees had withdrawn their objections to the remaining one. In this appeal not only do the appellants ask us to reverse the court below with regard to the propriety of the expenditure of state money for the Special Death Benefit Fund, but appellees also urge us to overturn the ruling that one of the five other expenditures considered, i.e., payment by the Relief Association of $100 per annum to the Firemen's Legislative Federation of Pennsylvania,[3] was not improper.

The Relief Association's Special Death Benefit Fund provides to its members a $200 payment upon death.[4] The benefit is available to "active" and "honorary" members who: 1.) pay an initiation fee of $1; 2.) present with their application for participation in the fund a certificate of good health from a physician; 3.) are under forty years of age at the time of application; 4.) pay an annual fee of $1; 5.) and do not die within one year of their application for participation in the fund. Of the approximately 8,000 members of the Relief Association, approximately 4,700 qualify for the Special Death Benefit Fund.

___

[3] Since appellees' brief contains no objection to the ruling of the court below as to the remaining four contested items of expenditure, we take it that those matters are not before us.

[4] Article V, §5 of the by-laws of the Relief Association also provides for a benefit of $7,000 to be paid to any member in good standing who is killed or dies as the result of public fire-fighting activities in the city.

The gist of appellees' objection to the use of state money and the interest earned thereon for the Special Death Benefit Fund is that the benefit is not available to all members of the Relief Association equally and without conditions of age, health and payment. Appellees also appear to suggest in their brief and in the pleadings in the court below that the use of state money for the fund is improper because a large proportion, if not a majority, of those eligible and participating in the fund have never actually been present at the scene of a fire and, in all probability, will never be so.

In support of his position denying approval of payment of money under the Act of 1895, the Auditor General points to the Act of April 9, 1929, P. L. 343, §6, 72 P.S. §6: "Every department, board, commission and officer of the State government, upon which or upon whom powers are conferred or duties imposed by this act, shall have the power to make and promulgate such rules and regulations as may be reasonably necessary for the exercise of such powers and the performance of such duties."

He urges that his insistence that benefits of the Special Death Benefit Fund be available unconditionally to all active or formerly active members of the Relief Association is merely such a regulation designed to ensure that the money distributed under the Act of 1895 "is being expended for no purpose other than that for which it was paid." Act of April 9, 1929, P. L. 343, §403, 72 P.S. §403.

While we share the appellees' view that the promulgation of regulations under the authority of the Act of 1929 is an act of discretion which courts normally ought not to interfere with unless unreasonable, arbitrary or illegal,[5] we nonetheless believe that in making

---

[5] Cf. *Jenkins Unemployment Compensation Case*, 162 Pa. Superior Ct. 49, 56 A. 2d 686 (1948) (per curiam) ; *Commonwealth*

such regulations the Auditor General may not exceed the statutory mandate quoted immediately above.

When we turn to the pertinent provisions of the Act of June 28, 1895, P. L. 408, §2, as amended, 72 P.S. §2262: "Each city, borough, town or township, receiving any payment from the State Treasurer hereunder, shall forthwith pay the amount received to the relief fund association of, or the pension fund covering the employes of the fire department, or of such fire company, or fire companies, paid or volunteer, now existing, or hereafter organized, . . . as is or are engaged in the service of such city, borough, town, or township, and duly recognized as such by the council or commissioners or supervisors, as the case may be, of such city, borough, town, or township." We find no warrant therein for the conclusion that a recipient may not impose reasonable[6] conditions attached to the death benefit by the Relief Association here. The statute contains no language or thought such as "all" or "equally" which the Auditor General seems to find in it. Nor does the statute support the appellees' suggestion that only men actually present at the scene of fires are eligible for benefits from the funds distributed under the Act. The phrase "as is or are engaged in the service" does not warrant that conclusion, first because "service" is not tantamount to presence at the scene of a fire, and second because, as an examination of the surrounding adjectival expressions readily discloses, "as is or are engaged in the service" clearly modifies the term "fire company, or fire companies" and not the term "employes."

---

v. *First Nat'l Bank of Scranton*, 63 Dauph. 298, 309 (1952), aff'd, 378 Pa. 272, 106 A. 2d 218 (1954).

[6] The age requirement for the special death benefit fund is designed to ensure the availability of a pool of able-bodied men for fire-fighting service.

Appellees' reliance on our interpretations of the Act of 1895 in *Commonwealth v. Souder,* 376 Pa. 78, 101 A. 2d 693 (1954), affirming 172 Pa. Superior Ct. 463, 94 A. 2d 136 (1953) and of similar legislation in *Hanover Township Police Pension & Benefit Fund Ass'n Case,* 396 Pa. 313, 152 A. 2d 705 (1959) also provides no support for its construction of the statute. In *Souder* we affirmed a Superior Court decision in which it was held that the Act of 1895 did not authorize the officers of a relief association to appropriate money received from the state under the Act of 1895 to their own use; in *Hanover* we held that money received from the state under legislation closely similar to the Act of 1895, could not, upon dissolution of the Pension & Benefit Association, merely be distributed to the former members thereof, but that such money must be placed in the successor pension and relief fund. As we read *Souder* and *Hanover,* they only stand for the proposition that money received from the state by pension and relief associations do not thereby vest in the memberships thereof, but must be distributed for "pension" and "relief" purposes. It is hardly disputable, and it has not been disputed in the instant litigation, that money distributed by the appellant's Special Death Benefit Fund is expended for relief.

Thus while we concede the authority of the Auditor General to make regulations in connection with his statutorily imposed duties, we believe that in the present case the rules laid down by him have no sound basis in the statute and therefore are not in furtherance of his auditing duties. As we have said before "the power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the Legislature as expressed by the statute." *Commonwealth v. DiMeglio,* 385 Pa. 119, 124, 122 A. 2d 77, 80 (1956).

As stated above, appellees, seek in this appeal to have us correct the ruling of the court below that the $100 annual contribution by the Relief Association to the Firemen's Legislative Federation of Pennsylvania is not an improper expenditure of money received under the Act of 1895. In its opinion the court below observed that: "[the federation] follows legislation in Pennsylvania which affects firemen in the Commonwealth. By attempting to secure favorable legislation, the Association attempts to maintain and improve the protections and benefits of firemen throughout the state and so to attract able men to fire duty. Specifically, it attempts to insure that the Commonwealth continue to pay proceeds of the foreign fire insurance tax to relief associations so that funds are available for relief purposes" and determined that appellant's contribution was not improper because "spent to provide directly for the benefit and protection of the Association's membership." In its brief in this Court, appellees contend that the court below erred because the contribution to a "lobbying group" is not a "direct benefit" to a relief association. Appellees do not suggest why such a contribution is not a "direct benefit," and more, pertinently, what in the Act of 1895 requires, that the money disbursed thereunder be used for the "direct," rather than the "indirect," benefit of a relief association. Suffice it to say, that we find the opinion of the court below entirely satisfactory in this regard. Indeed, for this Court to hold that state money specifically appropriated to an association of those involved in performing public duties may not properly be used to enable that group to follow state legislation affecting itself and its members in the discharge of their public duties would cast doubt on the propriety of the legislative activities of numerous as-

sociations the existence and expenditure of public funds which is presently authorized by statute.[7]

Judgment reversed.

Mr. Chief Justice BELL concurs in the result.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

At oral argument and in its brief much of appellant's argument before us dwelt upon the extent of the auditor general's power, by regulation, to govern the internal affairs of the association. I consider this argument misdirected. The auditor general's only concern is to determine if the funds received by appellant from the Commonwealth are being spent in accordance with the purpose for which they were paid. In doing so, the auditor general's duty and power to examine the books and records of the association are clear, as is his duty to refuse to approve requisitions for further payment if he determines that funds are being used for an improper purpose. This does not involve interference with the internal affairs of appellant for, as the Auditor General has stated, nothing prevents the association from establishing a special death bene-

[7] E.g., Act of August 9, 1955, P. L. 323, §§440-445, as amended, 16 P.S. §§440-446 and Act of July 28, 1953, P. L. 723, §§432-437, 16 P.S. §§3432-3437 (state associations of county commissioners, county solicitors and chief clerks; county controllers; sheriffs; district attorneys; probation officers; registers of wills and clerks of orphans' courts; prothonotaries and clerks of quarter sessions; county treasurers; recorders of deeds; directors of veterans' affairs; coroners); Act of February 1, 1966, P. L. (1965) 1656, §§701-702, 53 P.S. §§45701-45702 (state and county associations of boroughs); Act of June 24, 1931, P. L. 1206, §§610-612, 620-622, as amended, 53 P.S. §§55610-55612, 55620-55622 (state and county associations of supervisors of townships of the first class); Act of May 1, 1933, P. L. 103, §§601-604, 610-612, 614, as amended, 53 P.S. §§65601-65604, 65610-65612, 65614 (state and county associations of supervisors of townships of the second class).

fit limited in its coverage as long as Commonwealth funds are not used for this purpose.

Therefore, acknowledging, as the majority does, the auditor general's duty and power to audit appellant's records and to withhold approval of future requisitions of Commonwealth funds if he discovered an improper use of such funds, we are faced with what is the true issue in this case: Is the use of Commonwealth funds in the manner described a violation of the purposes for which they were appropriated?[1]

The Act of 1895, supra, does not specify the purposes for which these funds are to be used. It states that the amount involved shall be paid ". . . to the relief fund association of . . . the fire department, or of such fire company, or fire companies, paid or volunteer . . . as is or are engaged in the service of [the municipality] and duly recognized as such by the council . . . of such city . . . ." In *Commonwealth v. Souder,* 376 Pa. 78, 101 A. 2d 693 (1954), we affirmed a decision of the Superior Court, 172 Pa. Superior Ct. 463, 94 A. 2d 136 (1953), holding that individual members of an association designated by a municipality to receive the funds could not divide the funds privately. The necessary, though unstated, implication of that holding was that the funds had to be used for the general relief and protection of all the members of the receiving association. We so indicated in our prior opinion in this case, 415 Pa. 305, 308, 203 A. 2d 476, 478, and in our opinion in *Hanover Township Police Pension & Benefit Fund Association Case,* 396 Pa. 313, 152 A. 2d 705

---

[1] There is no room for the argument that no violation could have occurred here because only the interest on the funds was set aside for the special death benefit. The same restrictions apply to the interest as to the principal. *Commonwealth ex rel. v. Flowers,* 320 Pa. 73, 181 Atl. 485 (1935); *Reliance Bldg. & Loan Ass'n Case,* 141 Pa. Superior Ct. 315, 14 A. 2d 581 (1940).

(1959), dealing with the analogous police pension benefit associations which receive the premiums tax paid to the Commonwealth by foreign casualty insurance companies.

I perceive no reason to retreat from this position. While appellant argues with some force that its special death benefit serves a useful purpose in the recruitment of volunteers and in practice costs very little, it cannot escape the fact that Commonwealth funds intended for the relief of all members of the association are being used to provide a benefit for fewer than all. This is improper and cannot be justified even for good reasons. Therefore, I would now squarely hold that the payments made by the Commonwealth under the Act of 1895 may be used only for the general relief of all active and formerly active members of the relief fund associations.

With respect to the $100 per year payment by appellant to the Firemen's Legislative Federation of Pennsylvania, I am tempted to say simply that this is *de minimis* in view of its negligible effect upon appellant's funds. However, I do not believe that such a conclusion is warranted in a situation where we deal with a statutory directive of this nature. There is no way to comply with the legislative purpose of providing relief for firemen except to do so completely, and use of any of the Commonwealth funds for lobbying activity is not such a compliance. It just does not jell to say that the legislature has permitted funds that it allocated for a designated purpose to be used to influence and to direct the prospective determinations of the appropriating authority.

I dissent.

Mr. Justice O'BRIEN joins in this dissenting opinion.