## Firemen's Relief Association of Washington *v.* Minehart, Appellant.

Argued September 28, 1967.   Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Raymond Kleiman,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellants.

*Frank C. Carroll,* with him *Alexander McIlvaine, Henry W. Rhoads,* and *McIlvaine and Carroll,* and *Rhoads, Sinon & Reader,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, May 13, 1968:

Foreign fire insurance companies in Pennsylvania are assessed a tax of two percent on premiums collected by them in this Commonwealth. Under the Act of June 28, 1895, P. L. 408, §2, as amended, 72 P.S. §2262, there must be paid annually to the treasurers of the various municipal subdivisions in Pennsylvania a portion of this tax money corresponding to the amount of foreign fire insurance written in the receiving municipality. This same Act of 1895 further requires the recipient municipality to pay over the amount received to the designated firemen's relief or pension fund which serves the specific area. The City of Washington and the Township of Canton, having designated the Firemen's Relief Association of Washington as the authorized recipient of its share of tax money, have been collecting funds from the state and disbursing them to the Association since 1931.

By letter of January 12, 1965 the Auditor General informed the Association that payments under the Act of 1895 would thereafter be suspended. According to this letter, the Auditor General concluded that certain by-laws of the Association rendered its pension plan invalid for purposes of receiving said funds.[1] The chal-

---

[1] The Act of April 9, 1929, P. L. 343, §403, 72 P.S. §403, specifically empowers the Auditor General to examine the records of those organizations receiving state funds in order to determine whether those funds are in fact being used for a purpose authorized by the statute under which they are being received.

lenged by-laws provided (1) for pension benefits based solely upon years of service;[2] (2) for certain medical benefits for any member of the Association in good standing;[3] and (3) for certain death benefits to the family of a deceased member of the Association.[4] In response to this refusal to pay, appellee brought an action of mandamus in the Court of Common Pleas of Dauphin County. That court issued the mandamus, directing that appellee be paid its proper share of the

---

[2] "Any member of the Association who serves as an employee of the Fire Department for a period of twenty (20) years or more from and after the date of the organization of the paid Fire Department, shall be eligible to retire on a pension of no less than Seventy-five ($75.00) Dollars a month, or if a said member was paid in excess of One Hundred and Fifty ($150.00) Dollars a month, then one-half the salary received by such member from the City of Washington, Pa., as a member of the Fire Department, at the time of his retirement from service." By-laws, Article 13. sec. 4 (Record at 51a-52a.)

[3] "Any member in good standing shall be entitled to have paid for him by the Association, Doctor and Hospital bills in cases not covered by compensation and where compensation is paid he shall have paid for him the difference between the amount received from compensation and the total amount of the bills, provided, however, that after a period of one year, the amount paid for such bills shall not exceed the amount to which the said member would be entitled were he on pension. The payment of bills due to accident shall be paid, regardless of amount, but those due to sickness must exceed $10.00 in order to receive payment under this section." By-laws, Article 13, sec. 3 (Record at 51a.)

[4] "In case of the death of any active member of the Association in good standing or in case of the death of any member who has been placed on the pension list, his widow (but not including a widow by any marriage occurring subsequent to the date when said member was placed on the pension list), so long as she remains his widow, shall be entitled to elect to receive from the Association either the sum of Forty ($40.00) Dollars per month and Fifteen Hundred ($1500.00) Dollars, or to receive the sum of Twenty-five Hundred ($2500.00) Dollars and no monthly payments or further claim against the Association. . . ." By-laws, Article 13. sec. 6 (Record at 52a.)

tax moneys collected under the Act. From that decision the Auditor General and Treasurer have taken this appeal.

Appellants maintain that the Act of 1895 does not authorize the payment of moneys to any pension plan which fails to establish a minimum age for receiving benefits. They further contend that the Legislature did not intend to bestow Commonwealth funds upon any pension association which would use this money to provide medical and/or death benefits for its members. We are unable, however, to find any such limitations in the language of the Act of 1895, and thus agree with the court below that mandamus properly issued.

The Act of 1895 provides, in relevant part, as follows: "On and after the first day of January, one thousand nine hundred and nineteen, and annually thereafter, *there shall be paid by the State Treasurer* to the treasurers . . . [of the municipalities of this Commonwealth], the entire net amount received from the two per centum tax paid upon premiums by foreign insurance companies. . . . Each . . . [municipality] receiving any payment from the State Treasurer hereunder, *shall forthwith pay the amount received to the relief fund association of, or the pension fund covering the employes of the fire department* . . . [of such municipality]." (Emphasis supplied.)

It is readily apparent that, in the present case, the Auditor General has unilaterally decided that the *only* pension funds eligible for money under this statute are those which do not provide medical and death payments and which condition their benefits upon a minimum age. Since the statutory language quoted above fails to so limit the words "pension fund," we have, pure and simple, this classic problem of administrative law: To what extent may an administrative body or officer, under the guise of its regulatory power, actual-

ly amend a legislative pronouncement? The answer to this question is clear. It *cannot* so amend. As this Court said in *Commonwealth v. DiMeglio,* 385 Pa. 119, 124, 122 A. 2d 77, 80 (1956): "The power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the Legislature as expressed by the statute: [citing cases]." In the present case it nowhere appears that the "will of the Legislature as expressed by the statute" even remotely condones the arbitrary placing of these conditions upon pension plans, and we must therefore conclude that this administrative officer has stepped squarely upon the toes of our legislature in direct contravention of established principles of administrative law and in flagrant disregard of Pennsylvania's judicial precedents.

Just recently this Court, in litigation involving the Firemen's Relief Association of Reading, set out the limitations on the Auditor General's power under the Act of 1895. The Auditor General sought to withhold funds from the Firemen's Relief Association of Reading on the ground that this association planned to use part of the money for certain death benefits that would not be available equally to all members of the association. This, said the Auditor General, was not permitted under the Act of 1895. The controversy first reached our Court on the issue of whether mandamus was the proper remedy to compel payment of the funds to Reading. *Volunteer Firemen's Relief Association v. Minehart,* 415 Pa. 305, 203 A. 2d 476 (1964). It was there held that mandamus would lie. The Court read the Act of 1895 as being a non-discretionary directive to the Auditor General that he *shall* pay this money to the municipality and that these funds may be used "by the latter *for any lawful purpose.*" Id. at

307, 203 A. 2d at 478. (Emphasis supplied.) Cf. *Firemen's Relief Association v. Scranton*, 217 Pa. 585, 66 Atl. 1103 (1907).

Several statements made by the Court in the first *Reading* opinion shed additional light on the present problem. In deciding that mandamus was a proper remedy the Court noted that "mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law. [Citing case.] The present case falls squarely within these principles." 415 Pa. at 311, 203 A. 2d at 479-80. Finally, the death knell was sounded for the Auditor General's position in that case when we said at page 308, 203 A. 2d at 478: " 'The manner in which the fund was to be set up or administered was left by the legislature to the municipalities.' ", quoting from *Commonwealth v. Souder*, 172 Pa. Superior Ct. 463, 470, 94 A. 2d 136, 139 (1953), aff'd, 376 Pa. 78, 101 A. 2d 693 (1954).

The merits of the *Reading* mandamus were not reached by our Court until three years later, when, in *Volunteer Firemen's Relief Association of the City of Reading v. Minehart*, 425 Pa. 82, 227 A. 2d 632 (1967), the result so clearly foreshadowed by our first *Reading* case came to actual fruition: the Auditor General was ordered to disburse the money. Facing practically the same problem confronting this Court today, we held in the second *Reading* case that the Auditor General could not read words into the Act of 1895, and since that act contained no language whatsoever indicating that death benefits had to be made available equally to all members of the firemen's association, the Auditor General was not permitted to withhold any moneys on that basis. As we there recited, "while we concede the authority of the Auditor General to make regulations in connection with his statutorily imposed duties, we believe

that in the present case the rules laid down by him have no sound basis in the statute and therefore are not in furtherance of his auditing duties." Id. at 89, 227 A. 2d at 635.

This statement, as well as the decision of which it is a part, controls the controversy now before the Court. We can see no legal distinction between an attempt by the Auditor General to read, for example, a minimum retirement age into the Act of 1895 and his former unsuccessful attempt to read equality of death benefits into it. Neither requirement can find any statutory support and both constitute a clear intrusion by an administrative officer into the chambers of the Legislature.[5]

Appellants rely quite heavily upon a statement contained in *Altieri v. Allentown Officers' and Employees' Retirement Board,* 368 Pa. 176, 181, 81 A. 2d 884, 886 (1951) that a retirement system ought to bear some reasonable relation to the length of the public service of the recipients and also to the age of its beneficiaries.

---

[5] It cannot be gainsaid that the Act of 1895 nowhere defines a pension fund to be a fund which has a minimum age requirement. And it is a matter of common knowledge that pension funds are often geared to minimum years of service. Moreover, there is nothing in the nature of a pension fund that prevents the inclusion of medical and death benefits. These are also features quite common to many such funds. It has long been held that a pension is merely a bounty for past services, designed to provide the recipient with his daily wants. See, e.g., *Ballurio v. Castellini,* 29 N.J. Super. 383, 102 A. 2d 662 (1954) ; *Bell v. Midland Natl. Life Ins. Co.,* 78 S.D. 349, 360, 102 N.W. 2d 322, 328 (1960) ; *State v. City of Seattle,* 61 Wash. 2d 196, 377 P. 2d 454 (1963). Under the federal Servicemen's Indemnity Act of 1951, death benefits have been specifically held to be in the nature of a pension. *Turner v. United States,* 237 F. 2d 700 (8th Cir. 1956). Thus, to exclude the present fund from coverage under the Act of 1895 would have the effect of distorting the usual meaning of the term "pension fund" without any specific legislative directive, a practice contrary to basic canons of statutory construction.

This reference to the age of the beneficiaries was intended to apply and must be limited to retirement systems under the Act or Acts which expressly or impliedly have such a requirement. Moreover, *Altieri* is not applicable to the present case since it concerned a retirement system established pursuant to the Act of May 23, 1945, P. L. 903, §1 et seq., 53 P.S. §39371 et seq. Not only is the Washington Firemen's Relief Association administered completely independently of that act, but that act, as indicated by its very title, "Optional Retirement System for Officers and Employes" is not even intended to govern all the relief, retirement and pension associations in Pennsylvania's third class cities.[6]

Of course, we realize that there have been instances in which this Court has upheld the Auditor General when he refused to disburse funds to various pension and relief associations. However, those were cases in which the municipal associations were attempting to use Commonwealth money for purposes directly *contrary to the words of the statute itself*. Thus, in *Hanover Twp. Police Pension and Benefit Fund Association Case*, 396 Pa. 313, 152 A. 2d 705 (1959), we held that, under a statute similar to the Act of 1895, the members of the association could not distribute Commonwealth funds among themselves when the association dissolved, since the statute clearly called for the

---

[6] The full title of the Act of 1945 shows even more clearly that pension plans not established pursuant to this statute are to be left undisturbed. This title reads: "An Act authorizing cities of the third class to establish an optional retirement system for officers and employes *independently of any pension system . . . existing in such cities*." (Emphasis supplied.) Pennsylvania Laws, 1945 session, No. 362 at p. 903. Furthermore, the Statutory Construction Act specifically permits titles such as this to be used in ascertaining legislative intent. Act of May 28, 1937, P. L. 1019, §54, 46 P.S. §554.

payment *to a policemen's fund*. The Auditor General was therefore justified in holding that a *dissolved* fund could not pass benefits to its former members. Similarly, in *Commonwealth v. Souder*, 376 Pa. 78, 101 A. 2d 693 (1954), affirming 172 Pa. Superior Ct. 463, 94 A. 2d 136 (1953), an even more flagrant case, it was held that the Auditor General could interpret the Act of 1895 to forbid payment where association members were fraudulently diverting funds to their own private use. In both of these instances, the Auditor General was merely following clear legislative language and intent. In sum, it is one thing to say that the Auditor General is charged with the duty of inspecting the financial records of the associations to which he disburses Commonwealth funds; but it is quite another thing to urge, as do appellants, that an administrative body can amend a statute and then conclude that a given municipality has not conformed to this new, administratively created statutory language.[7]

The order of the Court of Common Pleas of Dauphin County issuing the writ of mandamus is affirmed.

---

[7] The dissenting opinion, in addition to advocating the position that all pension funds should have a minimum retirement age, also decides that certain by-laws of the association run afoul of the Pennsylvania Constitution. We, of course, express no opinion on that issue as it was never raised below by either party nor briefed or argued on appeal. This fact is apparently admitted by the dissent for it suggests a remand to allow the parties to litigate the constitutional issue. Certainly, an issue as complex as this one appears to be, and one whose eventual resolution could affect many of the Commonwealth's pension funds, should not even be *considered* by this Court when neither party has raised it. *Abrams Will*, 419 Pa. 92, 213 A. 2d 638 (1965) ; *Muse-Art Corp. v. Philadelphia*, 373 Pa. 329, 95 A. 2d 542 (1953) ; *Montgomery Cty. Bar Ass'n v. Rinalducci*, 329 Pa. 296, 197 Atl. 924 (1938). Moreover, to remand this case is tantamount to this Court telling the parties which issues to litigate, a practice heretofore eschewed.

**76**

Mr. Chief Justice BELL joins in this opinion and files a concurring opinion.

Mr. Justice EAGEN concurs in the result.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I join in the majority Opinion by Justice ROBERTS.

I believe that each retirement or pension Act should have two requirements—(1) years of service and (2) a provision for a minimum retirement age. However, this is unfortunately a matter for the Legislature or for a legislative body and not for the Courts, which the dissenting Opinion overlooks. Moreover, Justice COHEN fails to properly analyze and unwittingly overlooks the crucial distinguishing facts in each and all of the cases cited in the footnote to his dissenting Opinion, namely, that *those cases arose out of a statute or ordinance which contained a provision for a retirement age,* and references in those Opinions to retirement age were pertinent and appropriate to the statute or ordinance involved and must be so considered and restricted. This distinction is made crystal clear by the statement in the majority Opinion in which Justice ROBERTS aptly said: "Appellants rely quite heavily upon a statement contained in Altieri v. Allentown Officers' and Employees' Retirement Board, 368 Pa. 176, 181, 81 A. 2d 884, 886 (1951) that a retirement system ought to bear some reasonable relation to the length of the public service of the recipients and also to the age of its beneficiaries. This reference to the age of the beneficiaries was intended to apply and must be limited to retirement systems under the Act or Acts which expressly or impliedly have such a requirement."

With respect to the Constitutionality of two by-laws, if Justice COHEN is correct in his implication that they might violate Article III, Section 18 of the Constitution, then every retirement Act and every pen-

sion Act which does not contain, inter alia, requirements as to a minimum retirement age as a condition precedent for eligibility, and every Act for the relief of the poor* would be unconstitutional.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I disagree with the majority that the Auditor General is not empowered to withhold the allocation of state funds on the basis that the present pension fund[1] does not contain a minimum age requirement as a condition precedent for eligibility.

Under the Act of April 9, 1929, P. L. 343, 72 P.S. §403,[2] the Auditor General has the unqualified power

---

* See *Com. ex rel. Schnader v. Liveright*, 308 Pa. 35, 161 Atl. 697, which sustained the Constitutionality of the Act.

[1] Article 13, section 4 of the Association's by-laws provides: "Any member of the Association who serves as an employee of the Fire Department for a period of twenty (20) years or more from and after the date of the organization of the paid Fire Department, shall be eligible to retire on a pension of no less than Seventy-five ($75.00) Dollars a month, or if a said member was paid in excess of One Hundred and Fifty ($150.00) Dollars a month, then one-half the salary received by such member from the City of Washington, Pa., as a member of the Fire Department, at the time of his retirement from service."

[2] "The Department of the Auditor General shall have the power, and its duty shall be, to audit the accounts and records of every person, association, corporation, and public agency, receiving an appropriation of money, payable out of any fund in the State Treasury, or entitled to receive any portion of any State tax for any purpose whatsoever, as far as may be necessary to satisfy the department that the money received was expended or is being expended for no purpose other than that for which it was paid. . . .

"If at any time the department shall find that any money received by any person, association, corporation, or public agency, has been expended for any purpose other than that for which it was paid, it shall forthwith notify the Governor, and shall decline to approve any further requisition for the payment of any appropriation, or any further portion of any State tax, to such person, association, corporation or public agency, . . ."

and duty to audit the accounts and records of the instant Firemen's Relief Association to ascertain whether or not the fund appropriated to it is being expended for no purpose other than that for which it was paid. If the fund is not being properly expended, the Auditor General is authorized and has the affirmative legislative duty to withhold any future appropriations to the Association. Therefore, the first question presented for our decision is whether a pension system having no minimum age requirement as a condition for eligibility violates the purposes of the Act of 1895, as amended.[3]

The Act of 1895, as amended, plainly evinces an intention by the legislature to create a source of revenue necessary for the promulgation of relief funds and/or pension funds for city fire department employees. Appellee, however, in an effort to avoid the legal ramifications attendant to a pension fund, seeks to persuade us that the by-law in question falls within the broad category of "relief funds" and hence is in conformity with the avowed legislative purposes. I cannot agree. If the legislature intended pension funds to be included under the label of relief funds, it could have achieved

---

[3] "(a) On and after the first day of January, one thousand nine hundred and nineteen, and annually thereafter, there shall be paid by the State Treasurer to the treasurers of the several cities, towns, townships, and boroughs within the Commonwealth, the entire net amount received from the top two per centum tax paid upon premiums by foreign fire insurance companies. . . . Each city, borough, town or township, receiving any payment from the State Treasurer hereunder, shall forthwith pay the amount received to the relief fund association of, or the *pension fund covering the employes of the fire department*, or of such fire company, or fire companies, paid or volunteer, now existing, or hereafter organized, in such city, borough, town, or township, as is or are engaged in the service of such city, borough, town or township, and duly recognized as such by the council or commissioners or supervisors, as the case may be, of such city, borough, town, or township. . . ." (Emphasis supplied.)

that result by the simple method of excluding any reference to pension funds. However, the legislature chose to make a dichotomy between relief funds and pension funds and it is incumbent upon our Court to give such dichotomy vitality. Here the by-law involved patently manifests an intention to create some kind of retirement system notwithstanding the efforts of the Association to provide a different nomenclature.

The majority, while agreeing that a pension fund was intended to be created pursuant to the Act of 1895, nonetheless takes the position that the Auditor General cannot read into, alter, or amend the statutory provisions so as to provide for a minimum age requirement, citing *Volunteer Firemen's Relief Association of the City of Reading v. Minehart*, 425 Pa. 82, 227 A. 2d 632 (1967), as its authority. In the *Reading* case, over my dissent, we held that since the statute failed to contain language that the Special Death Benefit Fund should be made available equally and to all members of the Relief Association, the Auditor General had no sound basis in the statute to promulgate rules and regulations providing such limitations. Here there is a sound basis in the statute for the Auditor General's interpretation. The Act of 1895 specifically refers to a "pension fund" and the Auditor General by requiring a minimum age to be present in order to receive benefits under the fund is doing nothing more than interpreting the words "pension fund" in accordance with sound principles of law enunciated on several occasions by our Court. This distinction, in my view, takes the instant case completely out of the framework of the *Reading* case. The Auditor General is not reading into or amending the statute to provide age qualifications, but on the contrary is only interpreting and giving meaning to the obvious legislative intent and purpose as indicated by the statutory words "pension fund."

Moreover, this position is further substantiated by our first *Reading* case, *Volunteer Firemen's Relief Association v. Minehart*, 415 Pa. 305, 203 A. 2d 476 (1964), which case the majority advances as support for its position. I agree with the majority that certain statements made by the Court in that opinion do in fact shed light on the present problem, but, unfortunately, not for the majority's position. Our holding in the first *Reading* case was that "mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his *erroneous interpretation of the law.*" (Emphasis supplied.) 415 Pa. at 311, 203 A. 2d at 479-80. In the instant case the Auditor General's interpretation of the law is not erroneous since the law in Pennsylvania, as I will later indicate, clearly requires the presence of a minimum age as a condition for eligibility to receive any benefits under a pension system. It is my view that the legislature by specifically using the language "pension fund" intended that the moneys appropriated for such purpose would be expended in accordance with applicable principles of law. To conclude otherwise would amount to a presumption that the legislature intended an unreasonable result. Statutory Construction Act of May 28, 1937, P. L. 1019 §52, 46 P.S. §552.

Therefore, our next inquiry must be whether or not the absence of a minimum age requirement renders a pension invalid as not being in conformity with what the law deems necessary. In *Altieri v. Allentown Retirement Board*, 368 Pa. 176, 180, 181, 81 A. 2d 884, 886 (1951), we unanimously held: "As was said in Retirement Board of Allegheny County v. McGovern, 316 Pa. 161, 173, 174 A. 400, 'retirement acts are based on the theory of an adjusted compensation for time and service, payable in the future, provided the employee serves the required length of time and reaches

the *required age'* (Emphasis supplied.) Section 4(b) is, therefore, incomplete and unenforceable. The provision expresses no intent that payment of involuntary retirement benefits commence with the termination of the employe's services; and, no date for the commencement is specified. . . . A retirement system is supposed to bear some reasonable relation not only to the length of the public service of the recipients but also to the fact that they 'have reached an age where through decreased earning power because of impairment of mental or bodily vigor, they are compelled to separate themselves from active service.' Retirement Board of Allegheny County v. McGovern, supra, at p. 164; see also Kurtz v. Pittsburgh, 346 Pa. 362, 373, 31 A. 2d 257."

Obviously, the pension system in the instant case has no reasonable relation to the ages of its intended beneficiaries as required by the *McGovern* and *Altieri* cases.[4] In fact, it is entirely possible under the pres-

---

[4] Curiously, a majority of the present members of this Court, Chief Justice BELL, Justice MUSMANNO, Justice JONES, Justice COHEN and Justice EAGEN have on several occasions subsequent to the *McGovern* and *Altieri* cases reaffirmed without equivocation the basic established principle that in order for a pension fund to be valid and enforceable it must contain some minimum age requirement. See *Eisenberger v. Harrisburgh Police Pension Commission*, 400 Pa. 418, 162 A. 2d 347 (1960) ; *Wallow v. York Retirement Board*, 383 Pa. 200, 117 A. 2d 685 (1955) ; *Akins v. York Officers' and Employees' Retirement Board*, 368 Pa. 182, 81 A. 2d 883 (1951), affirming the court below in *Akins v. City of York*, 63 York 173 (1950).

In addition, the writer of the majority opinion has as recently as 1966, in *Taylor v. Abernathy*, 422 Pa. 629, 635, 222 A. 2d 863 (1966), cited and quoted with apparent approval the well established principles enunciated in the *McGovern* case, namely: "The system of delayed compensation as contemplated by the Legislature is designed 'to aid employees who have served a *long period* of time in public employment and have reached an *age* where through decreased earning power because of impairment of mental or bodily

ent plan to qualify for a pension at any age provided the recipient has been in the employ of the fire department for a period of twenty years. Surely, the legislature did not envision the use of tax funds to subsidize those who are still young and vigorous enough to subsidize themselves. Since appellee has attempted to circumvent the obvious will of the legislature, the Auditor General as required by the plain intendment of the Act of 1929, was certainly justified and authorized to withhold further payments. Since the type of pension system created by the Association is unlawful and invalid, the funds in dispute cannot possibly be expended for the purpose for which the funds were paid. If the Auditor General were to pay out such funds she would be acting contrary to the law, the will of the legislature, and her affirmative legislative duty under the Act of 1929.

Furthermore, the majority opinion seeks to distinguish *Altieri* on the basis that it has no application to the present case, since it concerned only a retirement system established pursuant to the Act of May 23, 1945, P. L. 903, §1, 53 P.S. §39371 for third class cities. Such a distinction is completely unfounded and meaningless. The thrust of our unanimous decision in *Altieri* is so easily ascertainable by even the most cursory and superficial reading of the case. *Altieri* did not rest upon the fact that it arose under a third class cities act but rather rested upon what our Court deemed necessary to create a valid, workable, and enforceable pension plan *under any Act* including the present one, namely, a minimum age is an absolute prerequisite to any pension plan promulgated by the legislature in this Commonwealth. There is no justification whatsoever in

vigor, they are compelled to separate themselves from active service.' Retirement Board v. McGovern, 316 Pa. 161, 164, 174 Atl. 400, 402 (1934)." (Emphasis supplied.)

requiring a minimum age for a pension plan created under The Third Class Cities Code and at the same time fail to require such a limitation under the "Firemen's Relief Association Act." The mere fact that we are dealing with different legislative acts without more does not dictate or compel a difference in treatment, especially in view of the fact that we are called upon today to interpret the identical language ("pension fund") appearing in both acts of the legislature. For these reasons I must dissent from the majority opinion with respect to its disposition of the pension fund issue.

With respect to the other two by-laws involved (the medical and death benefit provisions)[5] I am of the opinion that they present grave questions of constitutionality under the Pennsylvania Constitution, notably Article 3, §18 which provides in pertinent part as follows: "No appropriations shall be made for charitable, educational or benevolent purposes to *any person* or community nor to any denominational or sectarian

---

[5] "Any member in good standing shall be entitled to have paid for him by the Association, Doctor and Hospital bills in cases not covered by compensation and where compensation is paid he shall have paid for him the difference between the amount received from compensation and the total amount of the bills, provided, however, that after a period of one year, the amount paid for such bills shall not exceed the amount to which the said member would be entitled were he on pension. The payment of bills due to accident shall be paid, regardless of amount, but those due to sickness must exceed $10.00 in order to receive payment under this section. . . .

"In case of the death of any active member of the Association in good standing or in case of the death of any member who has been placed on the pension list, his widow (but not including a widow by any marriage occurring subsequent to the date when said member was placed on the pension list), so long as she remains his widow, shall be entitled to elect to receive from the Association either the sum of Forty ($40.00) Dollars per month and Fifteen Hundred ($1500.00) Dollars, or to receive the sum of Twenty-five Hundred ($2500.00) Dollars and no monthly payments or further claim against the Association. . . ."

institution, corporation or association: . . ." (Emphasis supplied.)

In *Busser v. Snyder,* 282 Pa. 440, 128 Atl. 80 (1925), our Court upheld an attack against the Old Age Assistance Act of May 10, 1923, P. L. 189, on the ground that it was an appropriation of state funds for charitable and benevolent purposes to a certain *class of persons* in violation of Article 3, §18, of the Constitution. See also, *Commonwealth ex rel. Schnader v. Liveright,* 308 Pa. 35, 161 Atl. 697 (1932).[6] In disposing of appellant's argument in *Busser* that the words "to any person or community" should have a restricted meaning, Justice KEPHART speaking for a unanimous Court remarked: ". . . In effect, appellant would have 'person' used in an individual rather than a collective sense,—certainly not broad enough to include the government acting in an administrative capacity, functioning through an agency, to work out governmental policies. Appellant argues that direct appropriations, in terms, are not prohibited to such agency, therefore the act is valid, even though the ultimate object may be to give to persons prohibited from receiving the money thus appropriated. This contention is not sound; 'per-

---

[6] In *Liveright,* we held that the provisions of the Act of December 28, 1931, P. L. 1503, popularly referred to as the "Talbot Act" were not in violation of Article 3, §18, since the Act was a properly drafted measure to provide relief *for the poor.* In addition, the Court rationalized that the Act was not a charitable undertaking, but rather the fulfillment of a public function and obligation on the part of government to provide poor relief to persons without any means of support. All the cases heretofore decided seem to indicate that in order to conform to constitutional requirements, relief legislation must be geared to those persons who for one reason or another are in dire need of such assistance. Here the by-laws of the Firemen's Relief Association permit benefits to be received without distinction between those not having the ability or means to maintain themselves and those who are in fact capable of supporting themselves.

son' and 'community' are not limited to the idea of a single person or place where persons are located; they are used in an inclusive sense, relating to an individual or a group or class of persons, wherever situated, in any part or all of the Commonwealth. It applies to persons, kind, class and place, without qualification. . . . The commission cannot use the money; it merely passes it on to the selected class. It is none the less a gift directly to the individual, even though it pauses for a moment on its way thither in the hands of the agency. . . . What the Constitution prohibits is the establishment of any such policy which causes an appropriation of state moneys for benevolent purposes to a particular class of its citizens, whether under the guise of an agency, as an arm of the government through which a system is created, or directly to the individual. . . ." 282 Pa. at p. 451.

By the same token, any appropriation made by the Commonwealth to the Firemen's Relief Association must be viewed as an actual appropriation to the class of persons comprising the Association, since they are the ultimate beneficiaries of the funds. To hold otherwise would permit the legislature to do indirectly that which "the Constitution prohibits it from doing directly." To permit "A" and "B" Association to be a proper recipient of state funds and not "A" and "B" individually, would make a mockery of our Constitution.

Moreover, it is extremely important to note the historical development, both legislatively and judicially, with respect to Firemen's Relief Associations in this Commonwealth, thus further evidencing the serious constitutional questions posed by the instant case. In *Philadelphia Association for the Relief of Disabled Firemen v. Wood*, 39 Pa. 73 (1861), the first case dealing with appropriations of public moneys to Firemen Relief Associations, it was determined that legislative

action designed to make a charitable appropriation to such associations was of doubtful constitutionality. While the problem involved in *Wood* was somewhat distinct from the problems involved here, it nevertheless labeled and categorized these appropriations and associations as charitable and benevolent in nature. Thereafter, in 1895, the legislature promulgated an act imposing a two per centum tax upon premiums received by foreign insurance companies doing business within the Commonwealth. Pursuant to that Act the funds collected by the state treasurer had to be paid over to the treasuries of certain cities and boroughs within the Commonwealth. Our Court in *Firemen's Relief Association v. Scranton,* 217 Pa. 585 (1907), held that Act to be constitutional on the basis that the statute did not make it mandatory on the part of the municipalities to appropriate those funds for the benefit of any private corporation, association or individual. Since the funds could be used for any lawful purpose within the discretion of local authorities, there could be no constitutional objection sustained on the basis of Article 3, §18. However, the Court again categorized the discretionary appropriation as an "executory *gift*" for benevolent and charitable purposes. The present Act of 1895, as amended, makes it mandatory on the city treasurers to pay over the funds to the associations. There is no longer any discretion whatsoever vested in the local authorities and, furthermore, our Court has reiterated on several occasions that an action of mandamus will lie to compel the payment of the funds to the associations. This historical analysis leads irresistibly to the conclusion that the associations are virtually in the same position today as they were in 1861 when the *Wood* case was decided and consequently of doubtful constitutionality.

For these reasons I must conclude that the majority should have permitted the litigants to argue and brief, either in the court below or in our Court, the constitutionality of the present relief measures as provided in the by-laws of the Association.

I dissent.

Mr. Justice Jones joins in this dissenting opinion.

———

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I would reverse the order of the court below. I agree with Justice COHEN'S view that the Auditor General is empowered to withhold the state funds in the instant case. I base such an opinion, however, solely on the view that *Altieri v. Allentown Retirement Board*, 368 Pa. 176, 81 A. 2d 884 (1951), controls in requiring that pension plans have a minimum age feature.