595 A.2d 688

**BOROUGH OF DUPONT, Petitioner,**

**v.**

**DEPARTMENT OF COMMUNITY AFFAIRS and Karen A. Miller, Secretary, Department of Community Affairs, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1991.

Decided July 12, 1991.

Fred A. Pierantoni, III, for petitioner.

Joel Weisberg, Chief Counsel, for respondents.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and KELLEY, JJ.

SMITH, Judge.

The Borough of Dupont (Dupont) petitions for a review of the Departmental Order of the Secretary (Secretary) of the Department of Community Affairs (Department) which denied Dupont's Petition for Determination of Municipal Financial Distress Status pursuant to the Financially Distressed Municipalities Act (Act 47), Act of July 10, 1987, P.L. 246, 53 P.S. §§ 11701.101—11701.501. Dupont raises before this Court various issues concerning whether the Secretary erred in denying Dupont's Act 47 petition when statutory indications of municipal financial distress were found, and in so doing presents this Court with its first opportunity to interpret Act 47's provisions regarding the granting or denial of municipal financial distress status.

The primary purpose of Act 47 is to "[e]nact procedures and provide powers and guidelines to ensure fiscal integrity of municipalities" and to "[e]nact procedures for the adjust-

ment of municipal debt by negotiated agreement with credi-
tors." 53 P.S. § 11701.102(b). To achieve this end, the
Department is empowered in part by Section 121 of Act 47,
53 P.S. § 11701.121, to compile and analyze information and
data on the financial status of Commonwealth municipali-
ties [1]; to investigate possible municipal financial distress
through consultation, correspondence, visits, and other
methods, specified and unspecified; to make appropriate
recommendations to a municipality where the municipality
needs assistance to correct minor fiscal problems; to devel-
op an early warning system for applicable municipalities
with respect to possible financial emergencies; and to dis-
tribute grants and loans to municipalities declared to be
distressed under the Act. 53 P.S. § 11701.121. In analyz-
ing a municipality's financial health, the Department is
required to evaluate its information against the eleven
criteria set forth in Section 201 of Act 47, 53 P.S. § 11701.-
201. That section provides in part that "[i]f at least one
criterion is present and the department assesses pursuant
to section 121(b) that it is a valid indication of municipal
financial distress, then the department shall exercise its
powers and duties pursuant to section 121." 53 P.S.
§ 11701.201.

Sections 202 and 203 of Act 47 clearly indicate, however,
that a determination of municipal financial distress status
rests within the discretion of the Secretary. Section 202
provides in pertinent part:

The following have standing to seek a determination of
municipal financial distress from the secretary:

(1) The department itself, if, subsequent to its review
and analysis under sections 121 and 201, it concludes that
a municipality is substantially in a condition of financial
distress.

(2) The governing body of the municipality upon pass-
ing a resolution by a majority vote of the governing body

1. "Municipality" is defined under Act 47 as "[e]very county, city,
borough, incorporated town, township and home rule municipality."
53 P.S. § 11701.103.

after a special public meeting duly advertised as provided by law.

53 P.S. § 11701.202. Section 203, setting forth the procedure for a determination of municipal financial distress status, provides in pertinent part:

(a) **Petition.**—A party with standing to petition under section 202 may petition the secretary seeking a determination that the municipality involved is a financially distressed municipality....

(b) **Hearing.**—Within ten days of receiving a petition, the secretary shall set a time and place for a public hearing ... within the county of the subject municipality.

(c) **Investigation.**—After receiving the petition but before the public hearing, the secretary may make an investigation into the financial affairs of the municipality....

(d) **Notice.**—The secretary shall publish notice of the hearing in accordance with the act of July 3, 1986 (P.L. 388, No. 84), known as the Sunshine Act ... [and provide written notice to certain municipal officials].

(e) **Hearing officer.**—The secretary or an official of the department designated by the secretary shall conduct the public hearing to hear testimony of the petitioners and other interested persons.

(f) **Determination.**—Within 30 days after the hearing, the secretary shall issue an administrative determination of whether the municipality is financially distressed and reasons for the determination.

53 P.S. § 11701.203.

In the present matter, Dupont filed a Petition for Determination of Municipal Distress Status pursuant to Section 203 of Act 47 on June 20, 1990 after passing the resolution required by Section 202(2). Thereafter, the Department performed a consultative evaluation of Dupont's financial condition and recommended that Dupont be declared a financially distressed municipality under Act 47. In so doing, the Department found that four of the criteria set forth in Section 201 were present, namely:

(1) The municipality has maintained a deficit over a three-year period, with a deficit of 1% or more in each of the previous fiscal years.

(2) The municipality's expenditures have exceeded revenues for a period of three years or more.

. . . .

(6) The municipality, for a period of at least 30 days beyond the due date, has failed to forward taxes withheld on the income of employees or has failed to transfer employer or employee contributions for Social Security.

(7) The municipality has accumulated and has operated for each of two successive years a deficit equal to 5% or more of its revenues.

53 P.S. § 11701.201; Financially Distressed Municipalities Act Consultative Evaluation of the Borough of Dupont, p. 3.

On July 26, 1990, a public hearing was held before a hearing officer appointed by the Secretary at which the Department's consultative evaluation was introduced into evidence and municipal officials and citizens presented testimony. On August 17, 1990, the hearing officer issued his report wherein he recommended that Dupont not be declared a distressed municipality under Act 47. The hearing officer noted that although Dupont met four of the criteria set forth in Section 201, there was also evidence of certain factors that might enable Dupont to extricate itself from its present financial troubles. In particular, it was noted that the assessed value of Dupont's real estate has shown a steady growth over the years; that Dupont is below the legal limit to which real estate taxes may be imposed, and in fact the actual tax burden on its residents is less than that of municipalities in the immediate area and on average throughout the state; that there are no indications that municipal services have diminished in the borough; and that Dupont's projected 1990 deficit of $344,000 can be met by available commercial credit in the form of a loan offered by First Eastern Bank in the amount of $350,000 to be repaid in ten years at a rate of interest to be determined later. The hearing officer also concluded that Dupont's financial

situation could benefit greatly from a comprehens'
management and financial management technical assistar
effort which the Department would be able to provide upc.
request. The Secretary adopted the hearing officer's re?
ommendation and on the same date as the hearing officer's
report issued her order denying Dupont's petition.

Dupont argues that the Secretary[2] erred by denying its
petition for financial distress status upon a number of
separately stated reasons, but which may essentially be
reduced to the following contentions: (1) that since Dupont
met the criteria of Section 201, and because the consultative
evaluation determined that Dupont is financially distressed,
it is entitled to be declared financially distressed under Act
47; (2) that the Secretary erred or abused her discretion by
disregarding the criteria of Section 201, the Department's
consultative evaluation, and competent evidence; (3) that
the Secretary erred by reading other criteria into Act 47
besides those set forth in Section 201; and (4) that substan-
tive evidence does not support the hearing officer's findings
concerning those points which led him to conclude that
Dupont should not be declared financially distressed. This
Court's scope of review of agency determinations, circum-
scribed by Section 704 of the Administrative Agency Law, 2
Pa.C.S. § 704, has been recently restated by the Pennsylva-
nia Supreme Court:

> Thus, a reviewing court may reverse or modify an agency
> order if ... the adjudication is in violation of constitution-
> al rights, if it is not in accord with agency procedure, if
> any finding of fact is not supported by substantial evi-
> dence, or if it is not in accordance with law. It is not in
> accordance with law ... if the agency decision represents
> 'a manifest and flagrant abuse of discretion or a purely
> arbitrary execution of the agency's duties or functions.'

*Slawek v. State Board of Medical Education & Licensure,*
526 Pa. 316, 322, n. 4, 586 A.2d 362, 365, n. 4 (1991) (quoting

**2.** Throughout its argument, Dupont asserts that the Department also
erred by denying relief. As stated previously, however, the determina-
tion of whether a municipality may be declared financially distressed
rests solely with the Secretary.

*Blumenschein v. Housing Authority of Pittsburgh*, 379 Pa. 566, 573, 109 A.2d 331, 335 (1954), *appeal dismissed*, 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955)). It is also well established that, absent bad faith, fraud, capricious action or abuse of power, a reviewing court may not inquire into the wisdom of an agency's action or into the details or manner of how the agency executes that action. *Id.* In light of these standards, it is abundantly clear that the Secretary's order must be affirmed.

 Dupont first argues that Section 201 requires that the Department distribute to Dupont grants and loans because Dupont has met criteria set forth in that section and because the Department's consultative evaluation determined that Dupont is financially distressed. Section 201 provides in relevant part that if "at least one criterion [of that section] is present and the department assesses ... that it is a valid indication of municipal financial distress, then the department shall exercise its power and duties pursuant to section 121." 53 P.S. § 11701.201. Section 121(g) provides that "[t]he department shall distribute grants and loans to financially distressed municipalities in accordance with Chapter 3." 53 P.S. § 11701.121(g). Section 301(a) of Chapter 3 of Act 47 provides, however, that "[t]here is hereby established within the department a program to provide emergency grants and loans to municipalities *declared to be distressed in accordance with this act.*" 53 P.S. § 11701.301(a) (emphasis added). Therefore, the Department may not distribute grants and loans to a municipality unless it has been declared financially distressed, even if criteria of Section 201 are met.

As stated previously, Sections 202 and 203 indicate that the decision to declare a municipality financially distressed rests within the discretion of the Secretary. The Secretary is not required by Act 47 to declare a municipality financially distressed if any of the criteria of Section 201 are present. The criteria of Section 201 are merely indicators of financial distress to be used by the Department in making its evaluation. 53 P.S. §§ 11701.201, 11701.202(1).

Similarly, Act 47 does not require the Secretary to adopt the recommendation of the Department's consultative evaluation. Section 203(c) provides only that such evaluation be placed into the record at the public hearing. Accordingly, there is no merit to Dupont's contentions that Act 47 mandates a declaration of municipal financial distress if Section 201 criteria are present or if the Department recommends such relief.

■ Dupont also argues, notwithstanding, that the Secretary erred by disregarding the presence of the Section 201 criteria and the contents and recommendation of the consultative evaluation. It is clear from a reading of the hearing officer's report, however, that these matters were considered. Moreover, it is within the discretion of the fact-finding agency to weigh all of the evidence; and this Court may not disturb the agency's determinations unless there is no support for them in the record. *Middletown Township v. Pennsylvania Public Utility Commission,* 85 Pa. Commonwealth Ct. 191, 482 A.2d 674 (1984). Judicial discretion may not be substituted for administrative discretion. *Slawek.* Therefore, Dupont's argument that the Secretary disregarded certain evidence has support neither in fact nor as a matter of law.

■ Dupont next argues that the findings upon which the hearing officer determined that Dupont should not be declared financially distressed—Dupont's ability to raise taxes, the availability of commercial credit, and the fact that Dupont has been able to maintain its services—are not supported by the record and that by placing emphasis on these findings, the Secretary is writing criteria into Act 47 that the legislature never intended. In fact, however, evidence of Dupont's current tax situation and the availability of commercial credit is set forth in the consultative evaluation, as well as in testimony presented at the hearing. Further, there is no evidence in the record that the current levels of municipal services to the residents of Dupont have diminished. Therefore, substantial evidence does support the hearing officer's pertinent findings.

■ There is also no merit to Dupont's contention that the Secretary has written into Act 47 the requirements that a municipality lack available commercial credit, be unable to provide municipal services, and be at its maximum legal tax limits before a declaration of municipal financial distress may be made. It is indisputable that the Secretary may weigh and consider all evidence relevant to a petition action brought under Section 203 and employ her expertise to those matters entrusted by the legislature in her discretion. *See Joint Bargaining Committee of Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board,* 503 Pa. 236, 469 A.2d 150 (1983). The Secretary's determination merely takes into consideration the various evidences of municipal financial health, potential, or distress to arrive at its conclusion. Moreover, there is nothing in Act 47 to prohibit the Secretary from taking a "wait and see" approach, which Dupont maintains is error; Act 47 does not require the Secretary to declare a municipality financially distressed if it is not and has available to it certain tools as well as the technical assistance of the Department to forestall and hopefully reverse present financial problems. It must be remembered that the intent of Act 47 is not to automatically shower troubled municipalities with money but to "[e]nact procedures and provide powers and guidelines to ensure fiscal integrity of municipalities" and to "[e]nact procedures for the adjustment of municipal debt by negotiated agreement with creditors." 53 P.S. § 11701.-102(b).

There being no evidence of capricious or arbitrary action, the Departmental Order of the Secretary must be affirmed.

## ORDER

AND NOW, this 12th day of July, 1991, the Departmental Order of the Secretary of the Department of Community Affairs is affirmed.