638 A.2d 379

**In re the CITY OF SCRANTON Request for Approval of the Enactment and Levying of an Income Tax on Non–Residents of the City of Scranton.**

**Appeal of CITY OF SCRANTON, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1993.

Decided Feb. 11, 1994.

110

Frank J. Bolock, Jr., and William W. Warren, Jr., for appellant.

Armand E. Olivetti and Michael A. Giannetta, for appellees.

Before CRAIG, President Judge, McGINLEY, J., and NARICK, Senior Judge.

McGINLEY, Judge.

This is an appeal by the City of Scranton (City) from an order of the Court of Common Pleas of Lackawanna County (common pleas court) which denied the City's request for approval of a one-year increase in the non-resident earned income tax from 1.0 percent to 1.6 percent. The order of the common pleas court is reversed.

On January 10, 1992, the Secretary of the Department of Community Affairs (Department) declared the City to be a distressed municipality under the Municipalities Financial Recovery Act (Act or Recovery Act), Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. § 11701.101–11701.501.[1] The Secretary of the Department appointed the Pennsylvania Economy League (PEL) as coordinator of the City's recovery and commissioned PEL to prepare a recovery plan. On July 20, 1992, a plan of recovery was filed in the City's municipal offices in accordance with Section 242 of the Act, 53 P.S. § 11701.242. After two revisions, the second amended plan was adopted by City Council, vetoed by the Mayor of the City and enacted by the Council over the veto on June 23, 1993.

On June 17, 1993, the City filed a petition with the common pleas court in accordance with Section 123(c) of the Act, 53 P.S. § 11701.123(c), seeking to raise the City's non-resident earned income tax from 1.0 percent to 1.6 percent. The petition was required because the increase would have exceeded the limit of 1.0 percent for non-resident earned income tax set forth in the Local Tax Enabling Act (LTEA), Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6930.13, and the Home Rule Charter and Optional Plans Act (Home Rule Charter Act), Act of April 13, 1972, P.L. 62, *as amended*, 53 P.S. 1–101–1–1309.[2]

1. The Department is required to make this decision with reference to the criteria set forth in Section 201 of the Act, 53 P.S. § 11701.201. At least one of the enumerated criteria must be found by the Department in order for a determination of financial distress to issue.

2. Section 123(c) of the Recovery Act provides:

After a municipality has adopted a plan under Subchapter C of Chapter 2, it may petition the court of common pleas of the county in

On July 14, 1993, three petitions for intervention were filed with the common pleas court by two non-resident taxpayers and the Borough of Dunmore. Intervention was granted and the City's petition proceeded to a hearing. On July 27, 1993, the common pleas court denied the City's petition, finding that the City failed to demonstrate that the increase in non-resident earned income tax was necessary. It is from this order that the City appeals.

The City contends that the common pleas court misapplied the standard this Court set forth in *Petition of City of Clairton*, 139 Pa.Commonwealth Ct. 354, 590 A.2d 838 (1991), in its determination that the increase in the non-resident earned income tax was not necessary. In *Clairton*, a group of non-resident taxpayers appealed an order of the Court of Common Pleas of Allegheny County which granted the city of Clairton's petition to raise the general purpose earned income tax by 0.5 percent for the year 1990. At this time, the Department had determined that Clairton was financially distressed pursuant to the criteria of the Act.

While neither Section 123(c) of the Act, providing a municipality with the right to petition the courts of common pleas for an increase in tax rate, nor Section 141 of the Act, 53 P.S. § 11701.141, which sets forth the jurisdiction of the courts of common pleas, specifically sets forth the standard which must be met by a municipality requesting an increase in tax rates, this Court in *Clairton* adopted the language relating to the establishment of "due cause" in petitions for tax rate increases which had been set forth in *Petition of Altoona v. Central Pennsylvania Retiree's Association Appeal*, 97 Pa.Commonwealth Ct. 637, 510 A.2d 868 (1986), as follows:

"[W]hile the statute gives the trial court the discretion to determine from the record whether due cause exists to

which the municipality is located to increase its rates of taxation for earned income, real property, or both, beyond the maximum rates provided by law. If a tax increase above existing limits is granted by the courts, the increase shall be effective for a period of one year from the date a final plan is adopted by the governing body pursuant to section 245. Subsequent increases in rates of taxation may be granted by the court upon annual petition of the municipality.

warrant additional millage, it does not invite the court to examine the budget itself and review the wisdom of the legislative decision underlying its adoption. Such legislative decisions cannot be disturbed absent a clear abuse of discretion. *Central Pennsylvania Retiree's Association Appeal,* 97 Pa.Commonwealth Ct. at 641, 510 A.2d at 870" (citations omitted).

*Clairton,* 139 Pa.Commonwealth Ct. at 359, 590 A.2d at 840–41. This Court went on to determine that the evidence of record supported the common pleas court's determination that Clairton's tax increase was necessary, and that the common pleas court properly determined it was precluded from examining Clairton's budget or reviewing the intent of the enactors of the ordinance which increased the earned income tax rate.

In its opinion, the common pleas court states that a literal application of the standard set forth in *Clairton* "suggests that the City could plug into its budget any figures that met its fancy so as to come up with a deficit suitable to make the tax levy necessary." Opinion of the Court of Common Pleas of Lackawanna County, September 17, 1993, at 6. The common pleas court stated that it was not prepared to act as a rubber stamp and went on to determine that the deficit which the City presented could be reduced or averted by an increase in the trash collection fee imposed on City residents. It was on this basis that the common pleas court denied the City's request.

Section 102 of the Act, 53 P.S. § 11701.102, sets forth the legislature's declaration that it is a public policy of this Commonwealth to foster the fiscal integrity of municipalities so that they may provide for the health, safety and welfare of their citizens and meet their financial obligations. Section 102 further provides that it is the intention of the legislators to:

Enact procedures and provide powers and guidelines to ensure fiscal integrity of municipalities while leaving principal responsibility for conducting the governmental affairs of a municipality, including choosing the priorities for and manner of expenditures based on available revenues, to the

charge of its elected officials, consistent with the public policy set forth in this section.

The Act provides that after a review of all relevant data the Department has the authority to make a determination of financial distress and the Department's decision in this regard is subject to judicial review to determine whether the adjudication is in violation of constitutional rights, an abuse of discretion, or if findings of fact are not supported by substantial evidence. *Borough of Dupont v. Department of Community Affairs,* 141 Pa.Commonwealth Ct. 234, 595 A.2d 688 (1991). Petitions are not submitted to the common pleas courts under Section 123(c) of the Act simply because a municipality has "plug[ged] into its budget any figures that met its fancy", but where a municipality and its residents are in real distress.

Neither the Act, nor this Court's opinion in *Clairton* mandates that the common pleas court act as a rubber stamp, as review is designed to establish both the existence of an actual deficit and the absence of any abuse of discretion on the part of the municipality. The common pleas court disregarded the correct scope of review and overstepped when it determined that although a deficit existed, taxes should not be increased on non-residents where an avenue for increasing revenues from residents exists.

At the hearing, David Miller (Miller), director of research for PEL, testified that the City was confronted with a poor economy and declining population in the 1980's. The City responded by increasing taxes significantly, which produced a non-competitive tax structure. The overall result was self-defeating and further depressed the City's economy. Reproduced Record (R.R.) at 133a–134a.[3] Miller testified that a primary goal of the recovery plan PEL drafted is to increase revenues to the City in the first years of the recovery and to decrease expenses in the following years. R.R. at 140a. Miller stated that the increase of 0.6 percent in the non-

**3.** Miller also testified that non-credible government and a mismatch between revenues and expenditures contributed to Scranton's distressed status as well. *Id.*

resident earned income tax to 1.6 percent will produce an increase in revenue while still maintaining the logical difference between resident earned income tax rates, currently at 3.4 percent combined City and school district, and non-resident rates. R.R. at 144a. Miller noted that the non-resident earned income tax rate will remain over 1.0 percent only so long as the City was in Department-certified distressed status. R.R. at 146a. This, and the other testimony presented by the City, was reviewed by the common pleas court to determine whether an abuse of discretion occurred. The common pleas court chose instead to examine the budget to see if there were alternative sources of revenue to fund the deficit. *See Township of Hopewell v. Municipal Water Authority,* 82 Pa.Commonwealth Ct. 134, 475 A.2d 878 (1984).

■ Appellees contend that evidence of the City's abuse of discretion exists: that it is a part of the City's plan to reduce mercantile and business privilege taxes, and reduce residents' earned income taxes in 1994 and 1995, and at the same time raising non-resident earned income taxes. Appellees characterize this as a tax decrease for City residents, coupled with a tax increase on non-residents, and a clear abuse of discretion. Appellees' approach is flawed. They do not delineate how a decrease in the mercantile tax or business privilege tax benefits City residents exclusively, and fail to recognize that discussion of any possible tax decrease for City residents in the future is premature at this time.

■ The Appellees make several additional arguments in defense of the decision by the common pleas court. First, although the Appellees concede that the petitions referenced in Section 123(c) and 141 of the Act relate specifically to earned income and real property taxes (which have caps imposed by statute), they state that it was not the intention of the legislature to authorize removal of the cap on *non-resident earned income tax.* Appellees assert that the LTEA places a 1.0 percent cap on all earned income tax, while the Home Rule Charter Act, under which Scranton operates, lifts the cap for residents but maintains the 1.0 percent cap for non-residents.

The Recovery Act is separate and distinct from the Home Rule Charter Act and Appellees' position strains the tenets of legislative interpretation. The Recovery Act explicitly authorizes distressed cities to raise tax rates beyond maximum rates provided by law. Non-resident earned income tax rates are not exempt from this legislative grant of authority.

■ Secondly, Appellees argue that imposition of an increase in the rate of non-resident earned income tax beyond 1.0 percent is unconstitutional because it is a tax rate increase without an increase in benefits. In Section 102 of the Act, the legislature recognized that "[t]he failure of a municipality to [be financially responsible] is hereby determined to affect adversely the health, safety and welfare not only of the citizens of the municipality but also of other citizens in this Commonwealth." Scranton's financial recovery will bestow a great benefit on its commuters, more so than on "other citizens" of the Commonwealth generally. Consequently we cannot agree that non-resident workers will obtain no benefit from their increased taxes.[4]

The decision of the common pleas court is reversed.

### ORDER

AND NOW, this 11th day of February, 1994, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is reversed and the City's request for approval of a one-year increase in the non-resident earned income tax from 1.0 percent to 1.6 percent is granted.

---

4. Appellees also contend that the burden for Scranton's financial recovery has been shifted unfairly to non-residents, because the recovery plan levies no similar tax increase on residents of Scranton. This argument ignores Miller's testimony that the residents of Scranton have already had their taxes raised several times in the past decade while non-resident earned income taxes have remained capped.