**In re Petition of the CITY OF CLAIRTON for court approval of additional fifty–hundredths percent general purposes earned income tax for residents and thirty hundredths percent general purpose earned income tax for nonresidents for 1996**

**Appeal of UNITED STEELWORKERS OF AMERICA, LOCAL 1557 and Gerald Strelick, Appellants.**

Commonwealth Court of Pennsylvania.

Argued March 13, 1997.
Decided May 20, 1997.

Ronald J. Brown, Pittsburgh, for appellants.

George S. Gobel, McKeesport, for appellee.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

United Steelworkers of America, Local 1557 and Gerald Strelick (Appellants) appeal from the order of the Court of Common Pleas of Allegheny County (trial court) which granted the petition of the City of Clairton (City) to levy additional earned income taxes on residents and nonresidents pursuant to Section 123(c) of the Municipalities Financial Recovery Act (Act).[1]  We affirm.

In January of 1988, the Department declared the City to be a financially distressed municipality and appointed the Pennsylvania Economy League, Western District, to coordinate and develop a recovery plan for the City.  In February of 1996, the City petitioned the trial court for approval to set its earned income tax rates for calendar year 1996 at levels above the statutory maximum rate of 1%.[2]  Although the proposed rates were reduced from those approved by the trial court in preceding years, Section 123(c) requires court approval each year where the rate proposed exceeds the rate allowed by law.

Appellants filed a response and objection to the petition and, following a hearing, the trial court entered an order granting the City's petition.  On appeal to this Court, Appellants argue that the existence of 1995 year end fund balances, particularly a balance of $446,399.00 in the City's general fund, precludes a finding of an actual deficit for 1996 and, therefore, the City abused its discretion in seeking the higher rate of taxation.

Section 141 of the Act, 53 P.S. § 11701.141, vests the trial court with juris-

---

1. Act of July 10, 1987, P.L. 246, *as amended,* 53 P.S. § 11701.123(c).  The Act empowers the Department of Community Affairs (Department) to declare certain municipalities as financially distressed, Sections 121 and 203(f) of the Act, 53 P.S. §§ 11701.121 and 11701.203(f), and provides for the restructuring of debt of such municipalities.  After a determination of financial distress is made, a coordinator is appointed by the Secretary of the Department to prepare and implement a financial recovery plan addressing the municipality's financial problems.  Section 221 of the Act, 53 P.S. § 11701.221.

2. The proposed earned income tax rates for 1996 were 1.50% for residents and 1.30% for nonresidents, less than the 1995 rates of 1.65% for residents and 1.35% for nonresidents.

diction to hear a petition filed by a financially distressed municipality to increase the rates of taxation beyond the maximum rates provided by law. Appellants concede that Section 141 contains no standard which must be met by a municipality seeking a rate increase. However, Appellants rely on *In Re City of Scranton,* 162 Pa.Cmwlth. 109, 638 A.2d 379 (1994), *petition for allowance of appeal denied,* 539 Pa. 696, 653 A.2d 1234 (1994), in which the court stated that the trial court's review of such a petition "is designed to establish both the existence of an actual deficit and the absence of any abuse of discretion on the part of the municipality." *Id.* 638 A.2d at 382. Appellants argue that, as defined by the Act, a deficit cannot be found where a municipality has year end fund balances.[3]

■ In *Scranton,* the court addressed the issue of the trial court's standard of review in these cases, initially observing that, in *Petition of City of Clairton,* 139 Pa.Cmwlth. 354, 590 A.2d 838 (1991), this Court had adopted the "due cause" standard of review as set forth in *City of Altoona v. Central Pennsylvania Retiree's Association,* 97 Pa.Cmwlth. 637, 510 A.2d 868 (1986). Under that standard of review, "the trial court [has] the discretion to determine from the record whether due cause exists to warrant additional millage." *Id.* 510 A.2d at 870. Upon review of the record in this case we conclude that the evidence supports the trial court's conclusion that the mere existence of year end fund balances does not prove that a deficit is not present or that due cause for the increase does not exist.

Randy S. Skrinjorich, the City's Financial Director, testified that the general fund balance for the fiscal year ending 1995 was $446,399.00, a reduction of $100,000.00 from the prior year. He stated that at the close of 1995, the City's operating budget was at a deficit of $100,328.00. Mr. Skrinjorich also stated that although there was a general fund balance of $546,727.00 in 1994, the budgetary surplus in the general fund for 1994

was only $15,615.00 after the balance of the fund was reduced by encumbered funds, contracts in the future, etc.

Mr. Skrinjorich further testified that certain revenues received in 1995 are not anticipated to be received in 1996, particularly $300,000.00 in revenues from delinquent taxes. He explained that the City's liability on unfunded debt, such as fire and police pension liabilities, increases from year to year as a result of a pension law.

Mr. Skrinjorich also testified that there would be a decrease in revenues in 1996 due to a decrease in taxes based on real estate assessments. He stated that the general fund balance operates as a tax anticipation loan and is used to keep the City running during the first four months of the year, before taxes are collected; Mr. Skrinjorich estimated that the fund balance would be close to zero by April of 1996. He also stated that the City, with 30% of its population at or below the poverty level, would receive $200,000.00 less in grants for public housing in 1996 than it received in 1995. Mr. Skrinjorich opined that without the additional taxes as requested in the City's petition, there would be a significant likelihood of an operational deficit by the end of fiscal year 1996.

Michael Foreman is employed with the Department as a municipal finance consultant and has been the City's recovery plan coordinator since 1989. Mr. Foreman testified that in determining a municipality's position with regard to a deficit, he looks at revenues and expenditures in a twelve-month period, but he does not take into consideration beginning or year end fund balances.

Contrary to Appellants' assertions on appeal, Mr. Foreman stated that the City is not anywhere near the end of its financial plight or near termination of its status as a financially distressed municipality. He testified that the general fund surplus is not excessive with respect to the City's financial situation and that the fund balance needs to be continued so that working capital remains avail-

---

**3.** Section 103 of the Act defines "deficit" as "[t]he excess of expenditures over revenues, stated as a percentage of revenue, during an accounting period. This calculation shall include

all governmental fund types and all proprietary fund types, but shall exclude all fiduciary fund types of the municipality." 53 P.S. § 11701.103.

able. Mr. Foreman stated that the recovery plan provides that earned income taxes be reduced each year and that the rate sought for 1996 was in accordance with the recovery plan. Finally, Mr. Foreman opined that it would not be sound and prudent financial management to impose an earned income tax for 1996 below the level sought by the City.

Both Mr. Skrinjorich and Mr. Foreman agreed that there would be a significant likelihood of an operational deficit without the additional taxes sought by the City in accordance with its financial recovery plan. Thus, the evidence of record supports the trial court's determination that the tax increase was necessary. *Clairton.*

Based on the language of *Scranton,* Appellants would have the courts deny such an increase so long as a municipality has any year end fund balances. However, a policy which requires a distressed municipality to operate without emergency financial reserves is one which effectively guarantees that the financial distress of the municipality will continue. Mindful that the Act reflects the legislature's intent to foster the fiscal integrity of municipalities, we must conclude that the trial court did not err in granting the City's petition, notwithstanding the existence of year end fund balances.[4]

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, May 20, 1997, the order of the Court of Common Pleas of Allegheny County, dated March 4, 1996, is affirmed.

---

[4]. Appellants also argue that there is no restriction which prohibits the City from issuing tax anticipation notes to meet short term cash requirements or any prohibition against applying some or all of the unreserved fund balances toward expenditure requirements for budget year 1996. However, it is not the function of the courts to determine the method by which a municipality must meet its fiscal needs. While the Act gives the trial court the discretion to determine the necessity of an increase in the rate of taxation, the Act does not permit the trial court to examine the budget and review the wisdom of the legislature in adopting the budget. *Scranton; Clairton.* Absent a clear abuse of discretion, such legislative decisions cannot be disturbed. *Id.*