John A. DANZILLI, Jr., in his capacity as Deputy Mayor, Municipality of Monroeville, Appellant

v.

James LOMEO, in his capacity as Mayor, Municipality of Monroeville.

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 2008.

Decided March 17, 2008.

James C. Conley, Pittsburgh, for appellant.

Chelsea Dice, Pittsburgh, for appellee.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is an issue of first impression: whether a municipality that places funds into an Integral Part Trust (Trust)[1] for post-retirement health-care/medical benefits falls within the meaning of "pension and retirement funds" under Chapter 73 of the Pennsylvania Probate, Estates and Fiduciaries Code, 20 Pa. C.S. §§ 7301–7319 (PEF Code), allowing those funds to be invested in corporate stocks and bonds.

Monroeville, formerly a borough, is a home rule municipality operating under a charter adopted by its citizens under the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. §§ 2901–3171. The Municipality of Monroeville was obligated to pay medical benefits for its retirees after they retired. To fund those obligations, it created a Trust to set aside funds to pay medical benefits to its employees after they retired, with the goal of reducing its overall obligation by using a "higher interest assumption" by investing those funds in higher return securities. Because the Trust reduced liabilities on the municipality's balance sheet by capitalizing this obli-

---

1. The record does not describe why the fund is named the "Integral Part Trust."

gation, Monroeville Council hoped to keep borrowing costs low.[2] To do so, it approved the transfer of $6,000,000 from the municipality's general fund to the Trust and directed that the funds be invested according to Chapter 73 of the PEF Code, 20 Pa.C.S. §§ 7301–7319. James Lomeo, the Mayor of Monroeville at that time (Mayor Lomeo),[3] refused to countersign the check to fund the Trust and directed that no funds were to be transferred into the Trust. Mayor Lomeo objected to the transaction because he believed the Trust was not a pension or retirement fund, and funds transferred into the Trust were "general funds" that were only allowed to be invested in accordance with Section 1316 of the Borough Code,[4] 53 P.S. § 46316.

Because Mayor Lomeo told Danzilli that he would only countersign the check to fund the Trust upon a court's determination that the Trust was a pension or retire-ment plan that could be invested pursuant to the PEF Code, Danzilli filed a declaratory judgment action with the Court of Common Pleas of Allegheny County (trial court) seeking a court determination stating the same. Mayor Lomeo filed an answer contending that Monroeville did not have the authority to enact an ordinance to invest post-retirement health care benefits in funds pursuant to Chapter 73 of the PEF Code as they were not considered a "pension or retirement fund." Danzilli then filed a motion for judgment on the pleadings.

Finding that the Trust created to fund post-retirement medical benefits was not a trust to fund a pension or a retirement plan within the meaning of Chapter 73 of the PEF Code, the trial court denied Danzilli's motion for judgment on the pleadings and then went on to dismiss the underlying declaratory judgment action.[5] Because the Trust did not fund a pension

---

**2.** John A. Danzilli, Jr., (Danzilli), the Deputy Mayor of Monroeville, explains that from an accounting standpoint, "the Governmental Accounting Standards Board (GAS) promulgated GASB Statement 43—Financial Reporting for Post–Employment Benefit Plans other than Pension Plans and GASB Statement 45—Accounting and Financial Reporting by Employers for Post–Employment Benefits Other than Pensions which will begin in December 2006, require local governments to recognize liability on their balance sheets for post-employment benefits other than pensions (OPEB). These post-employment benefits are primarily medical benefits. Among other things, GASB Statements 43 and 45 provide that if funds dedicated to funding OPEB liabilities are held in trust, they may be counted against the net OPEB liability, thereby reducing the net liabilities shown on the Municipality's balance sheet." (Reproduced Record at 1–2.)

In *Wells Fargo & Company v. Commissioner of Internal Revenue*, 120 T.C. No. 5, 120 T.C. 69, 2003 WL 301884 (U.S.Tax Ct.2003), similar accounting rules were promulgated in 1990 for non-pension, post-retirement benefits in Statement of Financial Accounting Standards No. 106 (SFAS 106). Pursuant to SFAS 106, for accounting purposes, employers had to accrue the cost of future health care benefits to be paid to employees after retirement during the employment of the employees. In that case, the employer established an employee benefit trust for retiree medical benefits. At issue was whether the funding of the contributions for the trust exceeded the account limit for reserves of qualified asset accounts. The Tax Court held that for employees who were retired when the trust was created, the present value of their projected benefits was properly allocated to the year the trust was created. Notably, though, there was never a dispute as to whether the trust was considered a pension.

**3.** Mayor Lomeo has since resigned from that position.

**4.** Act of February 1, 1966 (1965), P.L. 165, as added by Act of November 2, 1979, *as amended.*

**5.** Pa. R.C.P. 1034(b) provides that a court, when considering a motion for judgment on the pleadings, "shall enter such judgment or order as shall be proper on the pleadings."

or retirement plan, it went on to hold that Monroeville, even though a home rule municipality, could only allow investments authorized by Section 1316 of the Borough Code. That provision of the Borough Code limits investment of municipal funds largely to governmental securities and, notably, does not allow borough funds to be invested in corporate stocks or bonds.[6] This appeal by Danzilli followed.[7]

■ The determinative issue in this case is whether a trust created by a municipality to fund retiree medical benefits is a trust funding a "municipal pension or retirement plan" as used in 20 Pa.C.S. § 7301,[8] thereby allowing the administrator or fiduciary to place trust funds in investments authorized by Chapter 73 of the PEF Code (titled "Municipalities Investments").

Nowhere in the PEF Code are the terms "municipal pension plan" or "retirement plan" defined. However, the Municipal Pension Plan Funding Standard and

---

**6.** Much has been made in the briefs and in the trial court concerning the applicability of Section 1316 of the Borough Code to the matter before us. The short answer is that it has none. Once Monroeville enacted a home rule charter, it was no longer a borough, but a home rule municipality no longer governed by the Borough Code. The whole purpose of home rule was to allow citizens of local political subdivisions to decide how local matters were to be addressed, and how the local democracy was going to be organized and not be governed by one of the municipal or county codes. *Cox's v. Municipality of Monroeville,* 506 Pa. 167, 484 A.2d 737 (Pa.1984); *see also County of Delaware v. Township of Middletown,* 511 Pa. 66, 511 A.2d 811 (1986); *Wecht v. Roddey,* 815 A.2d 1146 (Pa.Cmwlth. 2002) (the adoption of a home rule charter acts to remove a municipality from the operation of the code provisions enumerating the powers of that particular class of municipality, and the Second Class County Code is not applied to every part of the Commonwealth); *Fraternal Order of Police, Fort Pitt Lodge No. 1 v. City of Pittsburgh,* 165 Pa.Cmwlth. 83, 644 A.2d 246 (1994) (City of Pittsburgh was permitted under home rule charter to establish a new procedure to allow for the hiring of experienced police officers even though it was in contravention of the Second Class City Code). *But see In re District Attorney,* 756 A.2d 711 (Pa.Cmwlth.2000).

Once a political subdivision adopts a home rule charter, it is no longer a city of the second class, a county of the third class, a borough or a township of the first or second class, but a "home rule municipality" and its "code" is the Home Rule Charter and Optional Plans Law. *See Musewicz v. Cordaro,* 925 A.2d 172 (Pa.Cmwlth.2006).

Even though the Borough Code does not apply, that does not mean that Monroeville, as a home rule municipality, can invest its funds any way it desires. Art. 9, § 9 of the Pennsylvania Constitution would control and provides, in relevant part:

The General Assembly *shall not authorize any municipality* or incorporated district *to become a stockholder* in any company, association or corporation, or to obtain *or appropriate money for,* or to loan its credit to, any corporation, association, institution *or individual.* (Emphasis added.)

*See also* Art. 8, § 8 of the Pennsylvania Constitution which places similar restrictions on the investments by the Commonwealth.

It is only because state and local pension funds or trusts are no longer "owned" by the state or local government, but by the beneficiaries of those funds or trusts, that allows those funds to be invested in corporate stocks and bonds. If the trust here is not a trust within the meaning of Chapter 73 of the PEF Code and are general funds of Monroeville as Mayor Lomeo suggests, then any investments of those funds in stocks and bonds would be unconstitutional.

**7.** Our scope of review is limited to whether the trial court committed a legal error and whether the findings were supported by the evidence. *Wecht v. Roddey,* 815 A.2d 1146 (Pa.Cmwlth.2002).

**8.** 20 Pa. C.S § 7301 provides that: "The term 'fiduciary' as used in this chapter shall include an administrator of a municipal pension or retirement plan and any other person whose fiduciary duties are, by statute, governed by the principles of this chapter. The provisions of this chapter shall apply only to such fiduciaries."

Recovery Act,[9] which, like the GASB standards that led to creation of the trust, was intended to quantify obligations that a municipality has to employees post-retirement, defines "Pension plan or system" as the "various aspects of the relationship between a municipality and its employees with respect to the retirement coverage provided by a municipality to the employees." 53 P.S. § 895.102. It defines "pension fund" as the "entity which is the repository for the assets amassed by a pension plan as reserved for present and future periodic retirement payments and **benefits** of active and retired members of the pension plan." *Id.* While not directly on point because it envisions a combined pension plan that pays both retirement payments and benefits, the Municipal Pension Plan Funding Standard and Recovery Act does define a "pension plan or system" as governing the "various aspects" of retirement coverage, which certainly encompasses medical retirement benefits, and a pension fund as the "entity" created to fund benefits—medical—owed to employees that have retired. Applying those definitions, a trust funding post-retirement medical benefits is a "pension or retirement plan" within the meaning of 20 Pa. C.S. § 7301.

This interpretation is consistent with how post-retirement medical benefits have been treated in other contexts. For example, in *Firemen's Relief Association of Washington v. Minehart,* 430 Pa. 66, 241 A.2d 745 (1968), our Supreme Court held that payment of post-retirement medical benefits could be included as part of a pension fund. In that case, a mandamus action was brought to compel the State Treasurer to make payments of funds to the City due on behalf of the volunteer firemen's relief association. Our Supreme Court held that a statute regarding the

payment by the municipality of funds received from the State Treasurer to the firemen's relief fund association or pension fund covering employees of the fire department did not preclude payment of medical benefits for members stating: "[t]here is nothing in the nature of a pension fund that prevents the inclusion of medical ... benefits. These are features quite common to many such funds. It has long been held that a pension is merely a bounty for past services, designed to provide the recipient with his daily wants." *Id.,* 430 Pa. at 72, 241 A.2d at 748.

Years later, in *Upper Providence Police Delaware County Lodge # 27 Fraternal Order of Police,* 514 Pa. 501, 526 A.2d 315 (1987), our Supreme Court again determined that post-retirement medical benefits could be provided by a pension or retirement system. In that case, the issue was whether it was illegal for an arbitrator to eliminate retiree medical benefits on the basis that it was an illegal act because the Home Rule Charter Law prevented a municipality from doing so. The Court held:

> The arbitrators' award eliminating post-retirement hospital and medical benefits for 1984 violated section 302 of the Home Rule Act as it constituted an illegal diminishment of retirement benefits to former and present employees ... Since the Township was prohibited by the Home Rule Act from voluntarily eliminating the post-retirement hospital and medical benefits for present and former employees, the award of the arbitrators eliminating those benefits for 1984 was illegal and thus in excess of the exercise of their powers.

*Id.,* 514 Pa. at 515, 526 A.2d at 322. More recently, this Court in *City of Wilkes–Barre v. City of Wilkes–Barre Police Benevolent Association,* 814 A.2d 285 (Pa.

---

**9.** Act of Dec. 18, 1984, P.L. 1005, *as amended,* 53 P.S. §§ 895.101–895.803.

Cmwlth.2002), and *Fairview Township v. Fairview Township Police Association*, 795 A.2d 463 (Pa.Cmwlth.2002), both cases involving labor arbitration awards, concluded that post-retirement medical benefits were retirement benefits. At the core of those matters were retiree medical benefits which were never even questioned to be a form of the employees' pensions.

Based on the statutory definitions contained in the Municipal Pension Plan Funding Standard and Recovery Act and because post-retirement medical benefits have been consistently interpreted to be retirement or pension benefits, the Trust created to fund those benefits is a pension or a retirement plan under 20 Pa.C.S. § 7301, and the fiduciary may invest those funds as authorized by Chapter 73 of the PEF Code.

Accordingly, the order of the trial court is reversed, and the matter is remanded to the trial court to enter judgment in favor of Danzilli.

### ORDER

AND NOW, this *17th* day of *March*, 2008, the order of the Court of Common Pleas of Allegheny County, dated June 28, 2007, is reversed and the matter is remanded to the trial court to enter judgment in favor of Danzilli.