IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary St. Fleur; Nicholas Gettel; Casey   :
Durkin; Damian Biancerelli; Rich         :
Johnson; Ethan Green; Angela           :
Gilgallon; and Michele McGovern      :
                               :
      v.                    :   No. 112 C.D. 2020
                               :   ARGUED: September 16, 2020
The City of Scranton, Mayor William L. :
Courtright; and Business Administrator  :
David Bulzoni,                 :
              Appellants

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: October 26, 2020

      The City of Scranton, Mayor William L. Courtright, and Business Administrator David Bulzoni (jointly, Scranton)[1] appeal from an order of the Court of Common Pleas of Lackawanna County (trial court). The trial court granted peremptory judgment in favor of individual Scranton residents Gary St. Fleur, Nicholas Gettel, Casey Durkin, Damian Biancerelli, Rich Johnson, Ethan Green, Angela Gilgallon, and Michele McGovern (jointly, Taxpayers) in their mandamus action against Scranton.

---

[1] The current Mayor is Paige Cognetti and the interim Business Administrator is Patrick Sheridan.

The trial court concluded that the provisions of The Local Tax Enabling Act (Enabling Act)[2] contained in Chapter 3[3] thereof, referred to by the parties here as Act 511,[4] set an aggregate limit on taxation that applies to Scranton. As a result, the trial court ordered Scranton to escrow a total of about $50 million in local taxes to repay taxes collected from Scranton taxpayers in excess of Act 511's aggregate limit.

After thorough review, we reverse the trial court's order.[5]

## I. Background

Scranton, formerly a Second Class A city, is presently a home rule city formed pursuant to the Home Rule Charter and Optional Plans Law (Home Rule Law).[6] Scranton imposes various taxes on its residents, including taxes purportedly levied pursuant to Act 511.[7]

---

[2] Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6924.101 – 6924.901.

[3] Sections 301-330 of the Enabling Act, 53 P.S. §§ 6924.301 – 6924.330.

[4] For ease of reference, we use the parties' designation of Act 511 to refer to the provisions of Chapter 3 of the Enabling Act.

[5] The following *amici* have submitted briefs in support of Scranton's position: Members of the Pennsylvania State Senate, Jay Costa and John Blake, representing Pennsylvania citizens and taxpayers; the Pennsylvania Department of Community and Economic Development; the City of Pittsburgh; and the Pennsylvania Municipal League.

[6] 53 Pa. C.S. §§ 2901 – 2984.

[7] The parties dispute whether certain taxes were imposed pursuant to Act 511. Taxpayers point out that several of Scranton's financial records refer to certain categories of taxes as "Act 511 taxes." Scranton counters that such references are not legally accurate or binding, and that the ordinances enacting the taxes refer to the Home Rule Law, not Act 511, as the enabling legislation. The trial court determined that all of the ordinances stated they were enacted under the Home Rule Law and any other applicable laws, and that a number of the ordinances cited both the Home Rule Law and Act 511. Tr. Ct. Op. at 5.

In light of our resolution of this appeal, however, this issue is immaterial.

Among other provisions, and relevant here, Act 511 contains a limitation on the aggregate local taxes certain municipalities may impose. Specifically, the aggregate of the various forms of local taxes levied by a municipality subject to Act 511 may not exceed the total value of all real estate in the municipality multiplied by 12 mils (.012). Section 320(a) of the Enabling Act, 53 P.S. § 6924.320(a).

For purposes of this action, it is undisputed that the total value of all real estate in Scranton in 2015 was $2,273,875,550. Tr. Ct. Op. at 2. Assuming the applicability of the aggregate local tax limitation in Act 511, the total of all 2015 taxes levied by Scranton could not exceed $27,286,506 ($2,273,875,550 x .012). *Id.* In 2017, the total real estate value was $2,304,080,217. *Id.* at 2 n.3. By our calculation, the aggregate limitation on that amount would be $27,648,963 ($2,304,080,217 x .012).

Taxpayers allege that Scranton collected aggregate Act 511 taxes of $34,477,500 for fiscal year 2015 and budgeted $36,792,500 for 2016 and $38,045,092 for 2017. *Id.* at 3. Accordingly, Taxpayers contend that Scranton collected aggregate taxes substantially exceeding the cap imposed by Act 511. In their mandamus complaint, Taxpayers asked the trial court to order Scranton to reduce its tax rates to comply with Act 511's aggregate limit and to deposit all excess taxes collected into a separate account for expenditure in the following fiscal year.

Scranton argues that Act 511's aggregate tax limit does not apply to home rule municipalities. Scranton asserts that the Enabling Act, of which Act 511 is a part, expressly does not apply to home rule municipalities. Scranton further posits that Act 511 is not a statute applicable in every part of the Commonwealth, and therefore, its purported limitation on aggregate taxes is not an exception to the general inapplicability of the Enabling Act. In addition, Scranton points out that it is a

3

distressed city pursuant to the Municipalities Financial Recovery Act (Act 47),[8] and as such, is statutorily authorized to impose additional taxes in order to support its plan for financial recovery. Scranton insists that applying Act 511's aggregate tax limit would defeat the purpose of Act 47 and prevent Scranton's financial recovery.

The trial court was persuaded by Taxpayers' argument that Act 511's aggregate limitation applies to Scranton. Accordingly, the trial court granted peremptory judgment in favor of Taxpayers. The trial court ordered Scranton to reduce its tax rates to comply with the aggregate limit and to place in a separate account the excess taxes collected for 2015, 2016, 2017, and 2018. Tr. Ct. Op. at 10. As the figures above indicate, the resulting tax loss for Scranton would be approximately $10,000,000 per year. *See id.*

This appeal by Scranton followed.[9]

---

[8] Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101-11701.501.

[9] While this case was pending, the legislature amended Act 511 to add the following:

**(d) Local Tax Limitations.**

The calculation of ***the aggregate amount of all taxes imposed under this section shall not include*** the following:

(**1**) Any ***revenues derived from a tax rate in excess of the tax rates authorized under this chapter which is levied under the act of July 10, 1987 (P.L. 246, No. 47) [Act 47]***, known as the "Municipalities Financial Recovery Act," or the act of December 18, 1984 (P.L. 1005, No. 205), known as the "Municipal Pension Plan Funding Standard and Recovery Act."
(**2**) Any ***revenues derived from the levy of a tax by a home rule municipality*** in compliance with 53 Pa.C.S. § 2962(b) (relating to limitation on municipal powers).

53 P.S. § 6924.320(d) (emphasis added). Thus, the new subsection (d), added by the Act of July 23, 2020, P.L. 76, effective September 21, 2020, provides expressly that the aggregate tax limitation of Act 511 does not apply to taxes imposed under either Act 47 or a home rule charter.
**(Footnote continued on next page…)**

4

## II. Issues

On appeal,[10] Scranton raises three issues, which we paraphrase as follows.

First, Scranton asserts that as a home rule municipality, it is not subject to limitations in the Enabling Act, and likewise is not subject to Act 511's aggregate limit on local taxes. Although Scranton may continue to exercise powers granted to cities in its former classification (a Second Class A city), limitations in the Enabling Act, including Act 511, no longer apply to Scranton.

Second, Scranton argues that the Home Rule Law precludes limits on the tax rates set by a home rule municipality unless those rates are contrary to powers "granted by statutes which are applicable in every part of this Commonwealth." 53 Pa. C.S. § 2962(c)(2). Scranton posits that Act 511 expressly applies only to certain municipal categories rather than to all municipalities. *See* Section 301.1(a) of the

---

However, although the amendment is dispositive of the issue going forward, it does not govern the outcome of this appeal. A statutory amendment during the pendency of an appeal, clarifying how the legislature views the statutory issue raised in the appeal, is not determinative of the outcome of the appeal, even though it dictates how the statute will apply in the future. *Hanaway v. Parkesburg Grp., LP*, 168 A.3d 146, 157 (Pa. 2017). Our Supreme Court has observed: "'We cannot discern the legislative intent of the General Assembly that passed the relevant, prior version of the . . . statute by examining the intent of the General Assembly that amended that statute.'" *Id.* at 157-58 (quoting *Commonwealth v. Lynn*, 114 A.3d 796, 827 (Pa. 2015)). *See also Wayne M. Chiurazzi Law Inc. v. MRO Corp.*, 97 A.3d 275, 277 (Pa. 2014) (quoting *Commonwealth v. Diodoro*, 970 A.2d 1100, 1108 (Pa. 2009) ("the legislative actions of a later General Assembly are not probative of the legislative intent of a prior General Assembly"), *cert. denied*, 558 U.S. 875 (2009)); *Commonwealth v. Shaffer*, 734 A.2d 840, 843-44 (Pa. 1999) (quoting *St. Joseph Lead Co. & Koppers Co. v. Potter Twp.*, 157 A.2d 638, 642 (Pa. 1957) ("the legislature cannot create authority retroactively simply by passing 'clarifying' legislation. The intent of the legislature must be determined as of the time the original act was passed")).

[10] Because our review involves solely the interpretation and application of statutory provisions, our standard of review is *de novo*. *Pilchesky v. Lackawanna Cty.*, 88 A.3d 954, 965 (Pa. 2014) (citing *In re Carroll*, 896 A.2d 566, 573 (Pa. 2006)).

Enabling Act, 53 P.S. § 6924.301.1(a). Therefore, Act 511's aggregate tax limit does not apply to Scranton.

Third, Scranton contends that as a distressed city authorized to impose additional taxes under Act 47, it is exempt from Act 511's aggregate tax limit. Pursuant to Act 47, Scranton may seek court authorization to impose additional taxes and charges in order to emerge from its distressed status. Scranton argues that applying Act 511's aggregate tax limit would undermine the purpose of Act 47 and Scranton's ability to recover from its distressed status.

## III. Discussion

### A. The Enabling Act and Act 511's Aggregate Tax Limit

The Home Rule Law provides generally that the *subjects* of taxation by a home rule municipality may be limited by statute, but the *rates* of taxation may not:

> [A] municipality which has adopted a home rule charter shall have the power and authority to enact and enforce local tax ordinances upon any subject of taxation granted by statute to the class of municipality of which it would be a member but for the adoption of a home rule charter at any rate of taxation determined by the governing body. . . . The governing body shall not be subject to any limitation on the rates of taxation imposed upon residents.

53 Pa. C.S. § 2962(b). *See also* 53 Pa. C.S. § 2962(h) (home rule municipality may levy any tax it would have power to levy if it had not adopted home rule charter), (i) (no statute shall limit home rule municipality's authority to establish its own tax rates regarding all authorized subjects of taxation).

Act 511 authorizes Pennsylvania municipalities to impose various forms of taxation on municipal residents, and in some instances on nonresidents within the municipality. *See*, *e.g.*, 53 P.S. § 6924.301.1(a), (a.1). As explained above, Act 511 includes an aggregate limitation on the total taxes a municipality may impose.

6

The primary dispute in this appeal is whether Act 511's aggregate tax limit applies to a home rule municipality. Resolution of this issue requires analysis of the interplay of Act 511, the Enabling Act generally, and the Home Rule Law.

The Pennsylvania Constitution grants a home rule municipality all powers not denied by the Constitution, the General Assembly, or the municipality's home rule charter. PA. CONST., art. IX, § 2. Therefore, the Home Rule Law is broadly construed, and any uncertainty is resolved in favor of the municipality and against statutory limits on the municipality's power. *See* 53 Pa. C.S. § 2961; *Pa. Rest. & Lodging Ass'n v. City of Pittsburgh*, 211 A.3d 810 (Pa. 2019). "From this, it necessarily follows that ***a home-rule municipality cannot, except where specified clearly by statute or the municipality's own charter, find itself vested with less power than a non-home-rule counterpart.***" *Pa. Rest. & Lodging*, 211 A.3d at 824 (emphasis added). Accordingly, "'a home-rule municipality's exercise of legislative power is presumed valid, absent a specific constitutional or statutory limitation.'" *Id.* (quoting *Se. Pa. Transp. Auth. v. City of Phila.*, 101 A.3d 79, 88 (Pa. 2014)).

Once a municipality adopts a home rule charter, it is no longer a municipality of its former class. *Danzilli v. Lomeo*, 944 A.2d 813, 815 (Pa. Cmwlth. 2008). This does not mean, however, that a municipality electing home rule status thereby loses its former statutory powers. "The whole purpose of home rule was to allow citizens of local political subdivisions to decide how local matters were to be addressed, and how the local democracy was going to be organized and not be governed by one of the municipal or county codes." *Id.* (citing *Cox's v. Municipality of Monroeville*, 484 A.2d 737 (Pa. 1984)) (additional citations omitted). In *Pennsylvania Restaurant & Lodging*, our Supreme Court observed that "the legislature intended municipalities electing home rule to enjoy as much or more authority than

7

municipalities that decline to do so." *Pa. Rest. & Lodging*, 211 A.3d at 825. Therefore, the Court concluded, "a home-rule municipality can invoke the authority that *any* municipality in the Commonwealth has been granted." *Id.* Nonetheless, any **limits** in a municipal code are no longer applicable once a municipality elects home rule. "'[A]lthough home rule cities may not be *limited or restrained* by their former municipal codes, there is no law preventing a home rule charter from exercising powers bestowed by its former code.'" *Id.* (quoting *Ziegler v. City of Reading*, 142 A.2d 119, 134 (Pa. Cmwlth. 2016)). To find otherwise, the Court reasoned, would result in a home rule municipality having less power than before it elected home rule, contrary to both our Constitution and the intent of the legislature.

Scranton was formerly a Second Class A city, and as such, it was subject to the Enabling Act, including Act 511. According to our Supreme Court's reasoning in *Pennsylvania Restaurant & Lodging*, once Scranton elected home rule status, it retained all powers conferred upon it by the Enabling Act, but was no longer subject to the Enabling Act's limitations. *See also* 53 Pa. C.S. § 2962(b), (h), (i). Therefore, we conclude that while Scranton may impose any type of tax authorized by the Enabling Act, including Act 511, the aggregate tax limitation contained in Act 511 does not apply to Scranton.

### B. The Home Rule Law and Act 511's Aggregate Tax Limit

As set forth above, the Home Rule Law provides that a home rule municipality is bound by statutory limits on subjects of taxation, but not limits on rates. Taxpayers alternatively contend, however, that Act 511's aggregate limit is not a limit on any individual tax rate, and therefore, the aggregate limitation is not proscribed by the Home Rule Law. Scranton counters that because it would have to reduce the rate of one or more types of tax in order to comply with Act 511's aggregate limit, the effect

8

of Act 511's application is to limit one or more of Scranton's tax rates, contrary to the Home Rule Law and the Pennsylvania Constitution. We agree with Scranton.

As discussed in section A above, both the Pennsylvania Constitution and the legislature have endowed home rule municipalities with the broadest possible power. To the extent there is any uncertainty whether Act 511's aggregate tax limitation is a limit on tax rates, Act 511 must be construed to favor Scranton as the home rule municipality. Therefore, any doubt must be resolved in favor of concluding that the aggregate tax limit is impermissible as applied to Scranton. *See* authorities cited in section A; *see also Cty. of Delaware v. Twp. of Middletown*, 511 A.2d 811, 813 (Pa. 1986) (in analyzing a home rule municipality's exercise of power, all ambiguities are resolved in favor of the municipality).

Moreover, even if this Court were to conclude that Act 511's aggregate limit is not a limit on a tax rate, it is indisputably still a limitation. As explained in Section A above, statutory limitations that would have applied to Scranton as a Second Class A city are no longer applicable under home rule. Thus, the aggregate tax limit is inapplicable in any event.

Further, Scranton asserts that the Home Rule Law does not limit the tax rates imposed by a home rule municipality unless those rates are contrary to powers "granted by statutes which are applicable in every part of this Commonwealth." 53 Pa. C.S. § 2962(c)(2). Act 511 expressly applies only to certain municipal categories rather than to all municipalities. *See* 53 P.S. § 6924.301.1(a). Accordingly, Scranton reasons that Act 511 does not apply "in every part" of Pennsylvania and does not limit Scranton's taxing power. We agree.

Court decisions have not been fully consistent in determining which statutes are "applicable in every part of this Commonwealth." *Accord In re Condemnation*

9

*of Tax Parcel No. 38-3-25 Valley Station Road, Coatesville, PA 19320*, 898 A.2d 1186, 1191 (Pa. Cmwlth. 2006) ("[w]hether a provision contained in a city or county code applicable to that particular class of city or county is a statute that is 'uniform and applicable in every part of this Commonwealth' has been decided somewhat inconsistently").

Nonetheless, we find Act 511's inapplicability here is clear. Act 511 applies only to specified categories of municipalities. Although it applies to Second Class A cities – Scranton's former status – it does ***not*** apply to home rule municipalities. *See* Section 301(a) of the Enabling Act, 53 P.S. § 6924.301(a). Thus, Act 511's aggregate tax limitation is likewise inapplicable to home rule municipalities. Taxpayers argue that Act 511 should be construed as applicable to home rule municipalities because it applies in every part of the Commonwealth, even though it facially does ***not*** apply to home rule municipalities. This argument is without merit.

### C. Act 47 and Act 511's Aggregate Tax Limit

Scranton argues in the alternative that applying Act 511 to limit taxes authorized by Act 47 would undermine the purpose of Act 47 and endanger Scranton's financial recovery from its distressed city status. Because we find that Scranton is not subject to Act 511's aggregate tax limit, we need not reach this alternative argument. Nevertheless, we address it briefly for completeness.

The purpose of Act 47 is "to foster fiscal integrity of municipalities so that they provide for the health, safety and welfare of their citizens; pay due principal and interest on their debt obligations when due; meet financial obligations to their employees, vendors and suppliers; and provide for proper financial accounting procedures, budgeting and taxing practices." Section 102(a) of Act 47, 53 P.S. § 11701.102(a); *see Borough of Wilkinsburg v. Dep't of Cmty. & Econ. Dev.*, 728

A.2d 389, 390 (Pa. Cmwlth. 1999) (quoting 53 P.S. § 11701.102(a)). Act 47 applies to all municipalities in Pennsylvania, including home rule municipalities. Section 103 of Act 47, 53 P.S. § 11701.103. Among other things, Act 47 empowers a distressed municipality, once it has adopted a recovery plan, to petition the relevant court of common pleas for authorization to impose earned income taxes, real property taxes, or both, in excess of limits otherwise imposed by law. *See Wilkinsburg*, 728 A.2d at 390 n.4 (citing Section 123(c)(1) of Act 47, 53 P.S. § 11701.123(c)(1)).

Scranton argues that applying Act 511's aggregate limit to force repayment of taxes will endanger the city's recovery from its distressed status under Act 47. We reject this argument.

Scranton has availed itself of distressed status since 1992. *See In re City of Scranton*, 638 A.2d 379, 380 (Pa. Cmwlth. 1994). According to the Pennsylvania Economy League of Central PA, LLC (PEL), the entity appointed by the Secretary of Community and Economic Development as the coordinator of Scranton's recovery, Scranton "was confronted with a poor economy and declining population in the 1980s. [Scranton] responded by increasing taxes significantly, which produced a non-competitive tax structure. The overall result was self-defeating and further depressed [Scranton's] economy." *Id.* at 382. After 28 years, Scranton still has not recovered from its distressed status.

Scranton fails to explain how Act 511's aggregate tax limit would curtail its ability to recover from distressed status. Regardless of Act 511's applicability, Scranton may still seek additional tax authority under Act 47. *See id.* at 383 (taxes limited by other laws are not exempt from a grant of authority under Act 47). Indeed, the very purpose of the additional tax provision of Act 47 is to allow a distressed

11

municipality, with court approval, to impose taxes in amounts exceeding any limits imposed by other laws. *See* 53 P.S. § 11701.123(c)(1). Therefore, Act 511's aggregate tax limitation is irrelevant to Scranton's distressed status or its recovery efforts.[11]

Nonetheless, because we find Act 511's aggregate limitation inapplicable on other grounds, the absence of merit in Scranton's Act 47 argument is not fatal to its appeal.

## IV. Conclusion

For the reasons discussed above, we find that Scranton is entitled under the Home Rule Law to collect taxes from its residents in amounts exceeding the aggregate tax limitation set forth in Act 511. Accordingly, we reverse the trial court's order.

_____
ELLEN CEISLER, Judge

Judge Covey concurs in the result only.

---

[11] Of course, the court of common pleas may decline to authorize additional taxes if it finds they are unnecessary to Scranton's recovery. A court's review of a tax request under Act 47 "is designed to establish both the existence of an actual deficit and the absence of any abuse of discretion on the part of the municipality." *In re City of Scranton*, 638 A.2d 379, 382 (Pa. Cmwlth. 1994).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary St. Fleur; Nicholas Gettel; Casey   :
Durkin; Damian Biancerelli; Rich        :
Johnson; Ethan Green; Angela          :
Gilgallon; and Michele McGovern    :
                                   :
        v.                  :    No. 112 C.D. 2020
                                   :
The City of Scranton, Mayor William L. :
Courtright; and Business Administrator  :
David Bulzoni,                :
             Appellants

## **O R D E R**

AND NOW, this 26th day of October, 2020, the order of the Court of Common Pleas of Lackawanna County dated December 16, 2019 is REVERSED.

_____
ELLEN CEISLER, Judge